**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. _____ |
| ARJUNA CAPITAL, LLC and FOLLOW THIS, | § § § | |
| Defendants. | § § | |

## COMPLAINT

Exxon Mobil Corporation ("ExxonMobil") files this complaint seeking a declaratory judgment that it may exclude Arjuna Capital ("Arjuna") and Follow This's shareholder proposal from ExxonMobil's proxy statement pursuant to Rule 14a-8 under the Securities Exchange Act of 1934 and not present it for a shareholder vote at ExxonMobil's 2024 annual shareholder meeting. Pursuant to Federal Rule of Civil Procedure 57, ExxonMobil respectfully requests relief by March 19, 2024 because ExxonMobil must file its proxy statement by April 11, 2024, in order for it to comply with its obligations under the Exchange Act in advance of its annual shareholder meeting on May 29, 2024.

## INTRODUCTION

1.      Most shareholders invest in companies to help the companies grow and see a return on their investment. But Arjuna and Follow This are not like most shareholders. Driven by an extreme agenda, they pursue what Follow This calls a "Goldilocks Trojan Horse" strategy: They (or their clients) become shareholders solely to campaign for change through shareholder proposals that are calculated to diminish the company's existing business.

1

2.     Arjuna and Follow This are aided in their efforts by a flawed shareholder proposal and proxy voting process that does not serve investors' interests and has become ripe for abuse by activists with minimal shares and no interest in growing long-term shareholder value.

3.     Arjuna's mission is to "shrink" energy companies, and its chief investment officer was found to be "***manifestly biased***" against ExxonMobil by a New York court.[1] (Emphasis added). Follow This explains in its governing documents and customer terms that it does not aim to achieve returns on behalf of its members through shares it acquires in energy companies.[2] And its website states: "We buy shares in order to work on our mission to stop climate change, ***not to make a financial profit***."[3]  (Emphasis added).

4.     To achieve their goal, Defendants take different approaches that are designed to take advantage of the current application of the shareholder proposal rules. Arjuna, an activist wealth management firm, represents clients who hold just enough shares in an energy company to be allowed to submit shareholder proposals. Those clients give Arjuna the authority to file a shareholder proposal and deal with all aspects of it.

5.     Follow This maintains a website where it asks people to donate money so that Follow This can buy enough shares in ExxonMobil or other energy companies to establish the necessary toehold to submit shareholder proposals. Follow This solicits funds, buys shares, and holds them in a Follow This investment account. It charges a fee of €5 for each share purchased and purports to "assign" each share to the person who contributed the funds.[4]

---

[1] *See People v. Exxon Mobil Corp.*, 65 Misc. 1233(A), at *16 n.7 (N.Y. Sup. Ct. 2019).

[2] *Amendment to the Articles of Association of Follow This*, FOLLOW THIS 2 (updated June 20, 2022), http://tinyurl.com/5apf9d9n.

[3] *FAQ*, FOLLOW THIS, https://www.follow-this.org/faq/ (last visited Jan. 20, 2024).

[4] *Id*.

6.      The contributors grant Follow This the "mandate and power of attorney" to use the shares to submit shareholder proposals to a company and vote the shares.[5] With this authority, Follow This prepares and submits shareholder proposals that seek to transform the company.

7.      Arjuna and Follow This have submitted numerous shareholder proposals to energy companies, including ExxonMobil. Although ExxonMobil's shareholders have consistently rejected Arjuna's and Follow This's proposals, those proposals are expensive and time-consuming to address, and they are rarely designed to promote overall shareholder value. Instead, they are frequently at odds with the interests of investors who are seeking to obtain returns for their pensions, 401(k) plans, and other savings and retirement investments. Defendants' proposal this year is no different.

8.      On December 14, 2023, Arjuna submitted on behalf of two clients a proposal for consideration at ExxonMobil's 2024 annual shareholder meeting (the "2024 Proposal"):

> Resolved: Shareholders support the Company, by an advisory vote, to go beyond current plans, further accelerating the pace of emission reductions in the medium-term for its greenhouse gas (GHG) emissions across Scope 1, 2, and 3, and to summarize new plans, targets, and timetables.

9.      The next day, Follow This joined the 2024 Proposal as a co-filer with Arjuna.

10.     The 2024 Proposal addresses substantially the same subject matter as the proposals that Follow This submitted for consideration at ExxonMobil's 2023 and 2022 annual shareholder meetings (respectively, the "2023 Proposal"[6] and the "2022 Proposal"), and which were overwhelmingly rejected. At the 2023 annual meeting, 89.5% of voting shareholders voted against the 2023 Proposal.

---

[5] *Follow This General Terms and Conditions–August 2020*, FOLLOW THIS 5 (Aug. 2020), http://tinyurl.com/5z6u8p23 (last visited Jan. 20, 2024).

[6] Arjuna co-filed the 2023 Proposal with Follow This.

11.     The 2024 Proposal does not seek to improve ExxonMobil's economic performance or create shareholder value. Like the previous proposals, it is designed instead to serve Arjuna's and Follow This's agenda to "shrink" the very company in which they are investing by constraining and micromanaging ExxonMobil's ordinary business operations.

12.     By calling for an acceleration in the pace of medium-term reductions across Scope 1, 2, and 3 greenhouse gas ("GHG") emissions,[7] Defendants are asking ExxonMobil to change its day-to-day business by altering the mix of—or even eliminating—certain of the products that it sells. Defendants' overarching objective is to force ExxonMobil to change the nature of its ordinary business or to go out of business entirely.

13.     This sweeping intrusion into ExxonMobil's ordinary business operations is designed to substitute Defendants' preferences for the judgment of ExxonMobil's management and board in determining how best to operate the company in an efficient and environmentally-conscious way.

14.     Defendants should not be permitted to continue to misuse the shareholder proposal rules to submit a proposal that interferes with ExxonMobil's ordinary business operations and when close to 90% of voting shareholders rejected the 2023 Proposal.

---

[7] "Scope 1 emissions" refers to direct GHG emissions from sources a company owns, operates, or controls. "Scope 2 emissions" refers to indirect GHG emissions from the utilities that a company purchases, like electricity, steam, heat, or cooling. "Scope 3 emissions" refers to indirect GHG emissions that could result from activities or assets along the value chain not owned or controlled by a company, such as the burning of gasoline by a motorist. These include, among other things, the GHG emissions generated upstream or downstream by the products and services sold by the company. In ExxonMobil's case, the vast majority of Scope 3 emissions are those generated by consumers when they use certain of the products that ExxonMobil sells, such as oil, gasoline, diesel, and aviation fuel.

15.     Rule 14a-8 governs the submission of shareholder proposals and provides multiple grounds for excluding the 2024 Proposal from ExxonMobil's proxy statement.

16.     The 2024 Proposal is excludable under Rule 14a-8(i)(7) because it "deals with a matter relating to the company's ordinary business operations." 17 C.F.R. § 240.14a-8(i)(7).

17.     The 2024 Proposal is also excludable under Rule 14a-8(i)(12) because it addresses substantially the same subject matter as the 2023 Proposal and the 2022 Proposal, and the resubmission criteria of Rule 14a-8(i)(12) are not met. *Id.* § 240.14a-8(i)(12).

18.     The plain language of Rule 14a-8 supports excluding the 2024 Proposal, but current guidance by SEC staff about how to apply the rule can be at odds with the rule itself. Even though that guidance has no legal force or effect, Defendants and other similar activist organizations rely on it to pursue their personal preferences at the expense of shareholders. ExxonMobil seeks declaratory relief from this Court to stop this misuse of the current system.

19.     ExxonMobil plans to exclude the 2024 Proposal from its proxy statement and, through this lawsuit, seeks a declaration that it may do so and not present the 2024 Proposal for a shareholder vote at its 2024 annual shareholder meeting.

20.     ExxonMobil must finalize its proxy statement by March 20, 2024, so that it can be printed and sent to shareholders and submitted to the SEC on April 11, 2024, in advance of ExxonMobil's annual shareholder meeting, which is scheduled for May 29, 2024.

21.     Accordingly, ExxonMobil seeks a declaration from this Court by March 19, 2024 that the 2024 Proposal is excludable from ExxonMobil's proxy statement.

## **JURISDICTION AND VENUE**

22.     This Court has federal question jurisdiction over this matter under 28 U.S.C. § 1331. This matter arises under Sections 14(a) and 27 of the Securities Exchange Act (15 U.S.C. §§ 78n, 78aa) and SEC Rule 14a-8 (17 C.F.R. § 240.14a-8). This Court also has diversity

jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among ExxonMobil, Arjuna, and Follow This, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

23.     This Court has power to grant declaratory relief under 28 U.S.C. § 2201. An actual controversy exists among Arjuna, Follow This, and ExxonMobil. Defendants seek to force ExxonMobil to include the 2024 Proposal in its proxy statement for the upcoming annual shareholder meeting, and ExxonMobil seeks a determination that the 2024 Proposal can be excluded under SEC Rule 14a-8 because (i) it "deals with a matter relating to the company's ordinary business operations" and (ii) it addresses substantially the same subject matter as the 2023 Proposal and the 2022 Proposal, and the most recent vote on the proposal did not satisfy the voting threshold to allow it to be resubmitted.

24.     This Court can exercise personal jurisdiction over Defendants, both of which have extensive contacts with the United States, which makes them subject to personal jurisdiction in this district pursuant to 15 U.S.C. § 78aa.

25.     Venue as to Follow This is proper under 28 U.S.C. §§ 1391(b)(1) and (c)(3) because it is not a resident in the United States but rather is a resident in the Netherlands.

26.     Venue as to both Defendants is proper under 28 U.S.C. § 1391(b)(2) and 15 U.S.C. § 78aa because the 2023 Proposal and the 2022 Proposal were delivered in this district and because the ExxonMobil annual shareholder meetings in 2023 and 2022 occurred in this district. These events are a substantial part of a claim at issue in this case, ExxonMobil's claims require an examination of the conduct and the proposals previously submitted in this district, and Defendants previously transacted business in this district.

27.     Venue as to both Defendants also is proper under 28 U.S.C. §§ 1391(b)(1) and (c)(2). Defendants are both entities under 28 U.S.C. § 1391(c)(2), deemed to reside in any judicial district where they are subject to the court's personal jurisdiction with respect to the civil action in question. Because both Defendants are subject to this Court's personal jurisdiction under 15 U.S.C. § 78aa, they both reside in this district for venue purposes under 28 U.S.C. § 1391(c)(2) and are amenable to suit here.

## PARTIES

28.     ExxonMobil is a corporation organized under the laws of the state of New Jersey, with its principal place of business at 22777 Springwoods Village Parkway, Spring, Texas 77389. At the time of ExxonMobil's 2022 and 2023 annual shareholder meetings, ExxonMobil was headquartered in this district.  ExxonMobil relocated its headquarters from Irving, Texas to Spring, Texas in July 2023.

29.     ExxonMobil's principal business involves exploration for, and production of, crude oil and natural gas; manufacture, trade, transport, and sale of crude oil, natural gas, petroleum products, petrochemicals, and a wide variety of specialty products; and pursuit of lower-emission business opportunities including carbon capture and storage, hydrogen, biofuels, and lithium.

30.     Arjuna is a limited liability company organized under the laws of Delaware with its principal place of business at 353 West Main Street, Durham, North Carolina 27701. It also operates at 13 Elm Street, Manchester, Massachusetts 01944. Arjuna is a registered investment adviser, and it received from two of its clients authorization to submit the 2024 Proposal and to handle aspects of it on their behalf. Arjuna itself does not hold any ExxonMobil stock.

31.     Follow This is an association organized under the laws of the Netherlands, with its principal place of business at Anthony Fokkerweg 1, 1059 CM Amsterdam, Netherlands.

## STATUTORY AND REGULATORY BACKGROUND

32.     Under the securities laws, a shareholder who does not attend a company's annual meeting can still vote by authorizing someone else to do so via a proxy.

33.     All U.S.-domiciled public companies must distribute a proxy statement to each of their shareholders in advance of the annual shareholder meeting. A proxy statement is a document or package of information that tells shareholders, among other things, about the items or initiatives on which they are asked to vote.

34.     Congress has authorized the SEC to regulate proxies "as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78n(a).

35.     The SEC promulgated Rule 14a-8 to "address[] when a company must include a shareholder's proposal in its proxy statement and identify the proposal in its form of proxy when the company holds an annual or special meeting of shareholders." 17 C.F.R. § 240.14a-8.

36.     In particular, Rule 14a-8 provides a procedure by which eligible shareholders may submit a shareholder proposal, along with a supporting statement, to be included in a company's proxy statement for consideration at the annual shareholder meeting. *Id*.

37.     Under certain circumstances, however, a company may exclude a shareholder proposal from its proxy statement, even if the shareholder is eligible and has otherwise followed the necessary submission procedures.

38.     Relevant here, under Rule 14a-8(i)(7), a company may exclude a shareholder proposal from its proxy statement if "the proposal deals with a matter relating to the company's ordinary business operations." 17 C.F.R. § 240.14a-8(i)(7).

39.     In addition, a company may exclude a shareholder proposal under Rule 14a-8(i)(12) if it "addresses substantially the same subject matter as a proposal, or proposals, previously

included in the company's proxy materials within the preceding five calendar years" and does not satisfy the resubmission criteria set forth in the rule. *Id*. § 240.14a-8(i)(12).

40.     The resubmission criteria of Rule 14a-8(i)(12) permit exclusion if "the most recent vote [on the duplicative proposal or proposals] occurred within the preceding three calendar years and the most recent vote was: (i) Less than 5 percent of the votes cast if previously voted on once; (ii) Less than 15 percent of the votes cast if previously voted on twice; or (iii) Less than 25 percent of the votes cast if previously voted on three or more times." *Id.*

41.     The relevant version of Rule 14a-8(i)(7), which governs the ordinary business exclusion, was adopted by the SEC in 1998.[8] In 2020, the SEC also adopted a new version of 14a-(i)(12), governing the resubmission exclusion.[9] The SEC proposed additional amendments to Rule 14a-8(i)(12), but those rules have never been adopted. From time to time, SEC staff have issued differing interpretations of Rule 14a-8 by publishing Staff Legal Bulletins ("SLB"), including most recently SLB 14L.[10] The SEC advises that the SLBs have no legal force or effect.[11]

42.     In addition, SEC staff offer informal guidance on the application of Rule 14a-8 to shareholder proposals when requested by companies. SEC staff explain that these "informal views" "do not and cannot adjudicate the merits of a company's position with respect to the

---

[8] Amendments to Rules on Shareholder Proposals, Exchange Act Release No. 34-40018, 63 FR 50622 (Sept. 22, 1998).

[9] Procedural Requirements and Resubmission Thresholds Under Exchange Act Rule 14a-8, Exchange Act Release No. 34-89964, 87 FR 70240 (Nov. 4, 2020).

[10] *See Shareholder Proposals: Staff Legal Bulletin No. 14L (CF)*, U.S. SEC. & EXCH. COMM'N (Nov. 3, 2021), https://www.sec.gov/corpfin/staff-legal-bulletin-14l-shareholder-proposals?.

[11] *See* Chair Gary Gensler, *Statement Regarding Shareholder Proposals: Staff Legal Bulletin No. 14L*, U.S. SEC. & EXCH. COMM'N (Nov. 3, 2021), https://www.sec.gov/news/statement/gensler-statement-shareholder-proposals-14l? ("Staff legal bulletins, like all staff statements, have no legal force or effect: they do not alter or amend applicable law, and they create no new or additional obligations for any person.").

proposal. Only a court . . . can decide whether a shareholder proposal can be excluded from a company's proxy materials."[12]

## FACTUAL ALLEGATIONS

**I.     ExxonMobil Is Committed to Providing the Energy Society Needs and Reducing Emissions.**

43.    ExxonMobil is one of the world's largest and most successful energy companies. It is committed to both providing the energy and products to meet society's needs and reducing emissions.

44.    Since 2000, ExxonMobil has invested billions of dollars to develop and deploy lower-emission energy solutions and is pursuing more than $20 billion in these efforts from 2022 through 2027. On an annualized basis, ExxonMobil's expenditures on lower carbon emissions efforts—for the company and third parties—represent approximately one-third of the U.S. Environmental Protection Agency's yearly budget.

45.    ExxonMobil helps its customers reduce their own emissions through the use of energy-saving technologies and high-value products. For example, ExxonMobil is expanding the supply of natural gas to displace coal, enabling substantial emissions reductions in power generation. The company also produces lightweight plastics and other materials for a range of vital health, safety, and lower-emissions products, is developing and implementing carbon capture technologies, and is developing high-efficiency fuels and lubricants.

46.    Shareholders know that ExxonMobil is actively engaged in emission reduction work. For instance, ExxonMobil has announced its ambition to achieve net-zero Scope 1 and 2 GHG emissions from its operated assets by 2050 with advancements in technology and clear and

---

[12] Division of Corporation Finance, Informal Procedures Regarding Shareholder Proposals (last modified Nov. 2, 2011), http://www.sec.gov/divisions/corpfin/cf-noaction/14a-8-informal-procedures.htm.

consistent government policies that support needed investments and development of market-driven mechanics. ExxonMobil also has plans to achieve net-zero Scope 1 and 2 GHG emissions in its Permian Basin unconventional operations by 2030.

## II.   Arjuna and Follow This Work in Concert to Abuse the Shareholder Proposal Process at the Expense of ExxonMobil Shareholders.

### A.   Arjuna and Follow This pursue a shared agenda at the expense of ExxonMobil shareholders.

47.     ExxonMobil views robust shareholder engagement on issues important to shareholders—including climate issues—as critical for improving its business. Each year, ExxonMobil engages with investors, employees, and other stakeholders to hear their concerns and suggestions on these issues.

48.     But Defendants are not like most ExxonMobil investors. Neither organization wants to improve ExxonMobil's business performance or increase shareholder value. To the contrary, Defendants share a different goal—disrupting ExxonMobil's investments and development of fossil fuel assets and causing ExxonMobil to change its business model, regardless of the benefits, costs, or the world's needs.

49.     Arjuna is an activist investment firm that pursues its own agenda, at the expense of shareholder value. A registered investment adviser, Arjuna encourages prospective and current clients to "divest from fossil fuels"[13] and attempts to dissuade energy companies like ExxonMobil from pursuing "growth" while selling products the world needs. Arjuna believes that energy companies need to "shrink."[14]

---

[13] ARJUNA CAPITAL, https://arjuna-capital.com/ (last visited Jan. 20, 2024).

[14] Natasha Lamb, *Arjuna Capital's Natasha Lamb: You Can't Deny Big Oil Needs to Shrink*, RESPONSIBLE INVESTOR (May 12, 2016), http://tinyurl.com/yha6v8tu.

50.     According to Arjuna's managing partners, none of its model portfolios include ExxonMobil stock, and they never have. Arjuna's investment portfolios are measured against benchmarks like the S&P 500, which include ExxonMobil. If ExxonMobil performs poorly, that performance is reflected in the benchmark indices and, all else equal, Arjuna's investment strategies perform better relative to the benchmarks. Arjuna's business model thus favors ExxonMobil doing poorly.

51.     In 2019, one of Arjuna's managing partners, Natasha Lamb, testified against ExxonMobil in a case brought by the New York Attorney General's Office. During the trial, Lamb admitted that Arjuna does not hold and does not recommend that anyone purchase ExxonMobil stock. She further testified that the only reason Arjuna's Chief Investment Officer owned ExxonMobil stock was to allow Arjuna to submit shareholder proposals.

52.     After hearing the evidence, the Honorable Barry Ostrager of the New York Supreme Court, Commercial Division, entered a complete defense verdict for ExxonMobil. In his decision rejecting the New York Attorney General's case, Justice Ostrager discounted Lamb's testimony, finding that she was "manifestly biased against ExxonMobil."[15]

53.     Follow This seeks to radically change the business model of energy companies and impose its agenda on them. It solicits funds from the public so it can buy individual shares in ExxonMobil and other energy companies. Even as it solicits funds to buy shares in energy companies, Follow This works to diminish their business by seeking to cause them to decrease production of products the world needs.

---

[15] *See People v. Exxon Mobil Corp.*, 119 N.Y.S.3d 829, 65 Misc. 1233(A), at *16 n.7 (N.Y. Sup. Ct. 2019).

**B.    Arjuna and Follow This submit shareholder proposals to undermine ExxonMobil's business.**

54.    Despite pursuing interests contrary to those of ExxonMobil and its shareholders, in the past eleven years, Arjuna has submitted eleven proposals to ExxonMobil (ten as the lead filer and one as co-filer), and Follow This has submitted three proposals to ExxonMobil. Some were excluded or withdrawn. All of their proposals that were voted on by shareholders were overwhelmingly rejected.

55.    Defendants submit these shareholder proposals to interfere with ExxonMobil's business and to promote their own interests over those of ExxonMobil's shareholders.

56.    By design, Defendants' proposals are meant to divert ExxonMobil from its core business lines and to encourage the company to shrink. Undeniably, Defendants' objectives and tactics run counter to the interests of ExxonMobil and its shareholders, who purchase shares in ExxonMobil to grow or safeguard their investments and life savings.

57.    Congress did not intend for the proxy rules to be used in this way. Many public companies, including ExxonMobil, expend significant resources each year addressing shareholder proposals that, like the 2024 Proposal, deal with matters relating to the company's ordinary business operations in service of special interests that are not shared with other shareholders.

58.    The costs of addressing shareholder proposals are high. The SEC has estimated that a "company can incur up to $150,000 to process a single proposal."[16] As SEC Commissioner Mark Uyeda has observed:

---

[16] Procedural Requirements and Resubmission Thresholds under Exchange Act Rule 14a-8, Exchange Act Release No. 34-89964, 85 FR 70240 (Sept. 23, 2020), https://www.sec.gov/files/rules/final/2020/34-89964.pdf.

> [T]his amount does not include opportunity costs associated with the board's and management's time that could have been spent on value-creating activities for the company.[17]

59.     Notwithstanding these high costs, the number of proposals that shareholders submit each year is rising because of how the SEC staff is applying the shareholder proposal rules.

60.     According to SEC figures, the number of proposals submitted in 2023 was 18 percent higher than in 2021. And the number of proposals that were voted on at annual shareholder meetings rose by 40 percent during that period. Proposals focused on environmental and social issues increased at an especially high rate, with the number of submissions growing by 52 percent and the number voted on by 125 percent between 2021 and 2023.[18]

61.     These increases during the past two years have occurred despite no change in the language of the statute or the applicable SEC rules. They can be traced only to changes in SEC staff positions on the application of the shareholder proposal rules.[19] Such shifting staff interpretations are not binding, however, and they do not have the force of law.

62.     Ultimately, the cost of responding to these proposals is borne by all shareholders, even though, as Commissioner Uyeda has observed, "only a minority of shareholders submit proposals."[20]

63.     Just as the number of shareholder proposals has increased, so too has the coordination among the activist investors who submit them. The securities laws have long

---

[17] Commissioner Mark T. Uyeda, Remarks at the Society for Corporate Governance 2023 National Conference (June 21, 2023), http://tinyurl.com/59ajtp77.

[18] *See id.*

[19] *See id.*

[20] *See id.*

recognized that multiple people who are acting as a coordinated group, taking concerted actions, or controlled by a single entity may be treated as a single person.

64.     Arjuna has a long history of collaborating with other activist organizations such as Proxy Impact, As You Sow, and others to influence shareholders. In 2021, Arjuna collaborated with As You Sow and Proxy Impact to campaign against ExxonMobil's director nominees through their membership in Coalition United for a Responsible Exxon ("CURE"). In addition, they have jointly published reports seeking to influence shareholders on hot-button issues and worked in concert to submit and support each other's shareholder proposals.

65.     The co-filing shown here by Arjuna and Follow This in support of the 2024 Proposal exemplifies that tradition.

## III.    Arjuna and Follow This Submit the 2024 Proposal, Which May Be Excluded Under Rule 14a-8(i)(7) and (i)(12).

66.     On December 14, 2023, Arjuna sent ExxonMobil a letter asking it to include the 2024 Proposal in ExxonMobil's proxy statement. The 2024 Proposal is:

> Resolved: Shareholders support the Company, by an advisory vote, to go beyond current plans, further accelerating the pace of emission reductions in the medium-term for its greenhouse gas (GHG) emissions across Scope 1, 2, and 3, and to summarize new plans, targets, and timetables.

67.     On December 15, 2023, Follow This submitted the identical proposal as a co-filer, designating Arjuna as the lead filer.

68.     On December 22, 2023, ExxonMobil responded to Arjuna and Follow This to notify them of procedural and eligibility deficiencies related to the 2024 Proposal.

69.     In accordance with Rule 14a-8(j), ExxonMobil is notifying the SEC of its intent to omit the 2024 Proposal from the proxy statement that ExxonMobil plans to distribute for its 2024 annual shareholder meeting.

70.     ExxonMobil is notifying the SEC that the 2024 Proposal may be excluded under Rule 14a-8(i)(7) and Rule 14a-8(i)(12).

**A.      ExxonMobil may exclude the 2024 Proposal under Rule 14a-8(i)(7).**

71.     A shareholder proposal may be excluded under Rule 14a-8(i)(7) if it deals with a matter relating to the company's ordinary business operations. 17 C.F.R § 240.14a-8(i)(7).

72.     The 2024 Proposal is excludable under Rule 14a-8(i)(7) because it seeks to cause ExxonMobil to go beyond the company's current plans and set more aggressive medium-term reduction targets for Scope 1, 2, and 3 GHG emissions. Targets and plans for reducing GHG emissions are prime examples of ordinary business operations for an energy company like ExxonMobil. They require a detailed and balanced understanding of ExxonMobil's business, global supply and demand, technical intricacies of emissions reductions, the selection of products and services the company offers, and other matters understood by management and the board.

73.     The 2024 Proposal seeks to replace ExxonMobil management's substantial expertise and well-considered business judgment with Defendants' preferred approach for reducing GHG emissions at an accelerated pace in artificial isolation. In doing so, the 2024 Proposal seeks to directly interfere with management's business judgment and micromanage ExxonMobil's core business—the energy and petrochemical products and services that ExxonMobil offers.

74.     In doing so, the 2024 Proposal seeks to usurp the role of management and the board to impose Defendants' personal policy preferences through a shareholder proposal process that was not designed or intended for such use.

75.     ExxonMobil plays a vital role in meeting the world's need for reliable and affordable energy and petrochemical products. To succeed in these highly competitive industries,

ExxonMobil must carefully consider the investments it makes to explore and develop a variety of energy and product solutions.

76.     ExxonMobil is a leader in innovation to supply the energy and products people need to live healthy, prosperous lives in the modern world. As such, it has already designed a comprehensive approach centered on detailed emission-reduction roadmaps to enable its ambition for deep reductions (in fact, net-zero) to its Scope 1 and 2 GHG emissions for its operated assets by 2050 with advancements in technology and clear and consistent government policies that support needed investments and development of market-driven mechanics. ExxonMobil also has set aggressive medium-term plans to reduce Scope 1 and Scope 2 GHG emissions as part of its ordinary business operations.

77.     The majority of ExxonMobil's Scope 3 emissions associated with ExxonMobil's products result from the combustion of certain of those products (oil and natural gas) by ExxonMobil's customers and end-users. Decisions about what mix of products to offer to consumers are quintessential examples of complex judgments delegated to management and the board. Relying on the expertise of its management, ExxonMobil sets the appropriate business strategy and product mix that it believes will meet the needs of its customers and at the same time help reduce GHG emissions and advance a thoughtful energy transition.

78.     To determine what business practices and corporate strategies ExxonMobil should employ to reduce GHG emissions across its business, ExxonMobil's management must evaluate various GHG measures and projections regarding ExxonMobil's current and future operations; anticipated economic, technological, and geopolitical developments; anticipated changes in national policy stringency and evolution; and projected changes in global energy requirements.

79.     As part of this evaluation, ExxonMobil's management must factor in ExxonMobil's highly complex, global operations that encompass multiple business lines including: the exploration and production of crude oil and natural gas; the manufacture of petroleum and petrochemical products; the transportation and sale of crude oil, natural gas, petroleum, and petrochemical products; and the development of a low carbon solutions business.

80.     ExxonMobil's management must also make difficult assessments regarding the company's substantial investments in researching and developing multiple technologies, some of which are at the forefront of early innovation and whose ultimate benefits may not be known for many years.

81.     Set against the complicated evaluation that ExxonMobil's management performs, the 2024 Proposal seeks to probe deeply into complex business matters and override management's judgment concerning key operational decisions, production levels, product mix, and the transition to lower-emission technologies.

82.     The 2024 Proposal seeks to have shareholders make very complex decisions regarding the energy and petrochemical product mix that ExxonMobil offers and how best to set, measure, and implement emissions reduction targets in ExxonMobil's business.

83.     Follow This calls the GHG emissions proposal a "Goldilocks Trojan Horse"[21] because once shareholders adopt it, the company "will conclude that there is no room for further investments in exploring for more oil and gas."[22]

---

[21] *For Investors*, FOLLOW THIS, https://www.follow-this.org/for-investors/ (last visited Jan. 20, 2024).

[22] *Id.*

18



Figure 1 – *Screenshot of Follow This's "For Investors" information page*

84.     If ExxonMobil were required to implement a Scope 3 reduction target as described in the 2024 Proposal, then under current technology and policy it would be forced to reduce or eliminate production and sell fewer of certain products. To replace that lost income, ExxonMobil thus would need to attempt to sell different products which lower or eliminate Scope 3 emissions.

85.     This is exactly what Defendants hope to achieve with the 2024 Proposal—an overhaul of ExxonMobil's business model, including the volume of oil and natural gas that ExxonMobil produces, its product mix, and the investments ExxonMobil makes in lower-emission technology and the exploration and development of oil and natural gas resources.

86.     In a recent interview, the Follow This founder said he wanted to take the current profits from fossil fuels and fully change energy companies' business models by investing them into what he calls "the business models of the future."[23]

87.     This ambition to micromanage ExxonMobil's business decisions regarding emissions reduction targets and product offerings is also reflected in Follow This's Amended

_____

[23] Noah Brenner, *In Conversation With: Mark van Baal, Founder of Follow This*, ENERGY INTELLIGENCE (June 14, 2023), http://tinyurl.com/ydsbc5x8.

Articles of Association. Article 2.2 states that Follow This wants to change publicly traded energy companies so that they are "dedicated to the delivery of energy products and services that contribute to sustainable development."[24] Article 2.3 defines "sustainable development" as "energy products and services from non-fossil sources."[25]

88.    Arjuna has similar goals. Despite its managing partner having been found to be "manifestly biased" against ExxonMobil by a court, Arjuna still expects to have a say in ExxonMobil's operations and decision-making process when it comes to GHG emissions. Defendants seek to change ExxonMobil's business model and products with no regard to the financial impact it would have on the company and its shareholders.

89.    Decisions about how and when to accelerate GHG emissions reductions are complex matters that management should determine using their sound business judgment and expertise in the energy industry. Defendants' view that they can quickly force public companies out of the oil and gas industry is simplistic and against the interests of the vast majority of ExxonMobil shareholders. Other private companies and state-owned oil companies would quickly satisfy the volumes that ExxonMobil stopped producing, thus negating any impact on global sales or demand and likely worsening overall emissions. Ultimately, none of this would benefit ExxonMobil's shareholders.

90.    The 2024 Proposal's request to accelerate Scope 3 emissions reductions highlights why it relates to ExxonMobil's ordinary business. Estimating Scope 3 GHG emissions requires understanding the full range of indirect emissions from sources not owned or controlled by the

---

[24] *Amendment to the Articles of Association of Follow This*, FOLLOW THIS 2 (updated June 20, 2022), http://tinyurl.com/5apf9d9n.

[25] *Id.* at 3.

company but rather by people or businesses using the company's products.[26] In addition, Scope 3 measurements often result in double counting because the same emissions are treated as Scope 3 for the factory making the product and Scope 1 for the company using that same product.

91.     Setting goals for Scope 3 GHG emissions is a matter of significant business judgment because it requires the company to make assumptions about other people's activities, which can make Scope 3 goals challenging to set.

92.     Scope 3 is also an insufficient metric to fully assess an individual company's progress in helping reduce emissions while producing essential goods. The only reasonable way to fully assess a company's progress is to understand the amount of GHG it emits relative to the products it produces and the alternatives to those products. This full life cycle carbon intensity approach provides a way to compare companies and product alternatives regardless of a company's relative size or what products it produces. Scope 3 measurements do not allow for such insights and therefore could drive a company to discontinue operations or divest.

93.     A company that reduces its production of energy products will see its Scope 3 emissions decrease, but the global and aggregate production of energy products does not stop unless society's needs also decrease by an equal amount. As a result, if other companies, including state-owned oil companies like those in Russia, Iran, and elsewhere, fill the production void to meet the existing demand, they may do so in ways that are less efficient with higher emissions. Moreover, society's needs may go unfulfilled, potentially leading to supply disruptions with

---

[26] The difficulty of this is apparent in the many different categories used to measure GHG emissions: Category 1-Purchased Goods and Services, Category 2-Emissions From Capital Goods, Category 3-Emissions From Fuel and Energy, Category 4-Upstream Transportation and Distribution, Category 5-Waste Generated in Operations, Category 6-Business Commuting, Category 7-Employee Community, Category 8-Upstream Leased Assets, Category 9-Downstream Transportation and Distribution, Category 10-Processing of Sold Products, Category 11-Use of Sold Products, Category 12-End of Life Treatment of Sold Products, Category 13-Downstream Leased Assets, Category 14-Franchises, and Category 15-Investments.

resulting spikes in price and the shifting of jobs and shareholder profits to other companies and nations. Scope 3 targets and measurements are not designed to consider these important nuances and as a result will reward an individual company's behavior that shows a reduction in that company's GHG emission levels even when society's GHG emissions remain constant or increase.

94.     In addition, Scope 3 does not account for critical technologies such as removals achieved by carbon capture and storage and negative emission technologies (such as direct air capture) and their potential impact in reducing GHG emissions at scale, which are considered essential to achieve a net-zero outcome for society. Because these technologies are not considered by Scope 3, if a company were to rely only on Scope 3 to measure progress, those calculations might adversely affect the company's willingness to invest in such critical technologies.

95.     Through the 2024 Proposal, Defendants seek to micromanage and interfere with ExxonMobil's consideration of these important factors. ExxonMobil's management is most capable of considering all these factors and many more when making business decisions about measuring GHG emissions and setting any goal for reductions on these measurements.

96.     These decisions directly impact an energy company's ordinary business operations and under Rule 14a-8(i)(7) are rightfully left to the company's management, precisely because management has a robust understanding of the internal workings of the company and its business.

97.     By seeking to directly micromanage ExxonMobil's ordinary business operations, the 2024 Proposal seeks to cause ExxonMobil to set targets that would fundamentally change its business model and abandon its core revenue sources to satisfy Defendants' agenda. This oversteps not just the proxy rules but also the role of shareholders under corporate law, which is the original basis of Rule 14a-8(i)(7).

98.     Given the implications that such judgments and tactics have on ExxonMobil's ordinary business operations, the 2024 Proposal may be excluded under Rule 14a-8(i)(7).

   **B.     ExxonMobil may exclude the 2024 Proposal under Rule 14a-8(i)(12).**

99.     A company may exclude a shareholder's proposal under Rule 14a-8(i)(12) when it "addresses substantially the same subject matter as a proposal, or proposals, previously included in the company's proxy materials within the preceding five calendar years if the most recent vote occurred within the preceding three calendar years and the most recent vote was . . . [l]ess than 15 percent of the votes cast if previously voted on twice." 17 C.F.R. § 240.14a-8(i)(12).

100.     ExxonMobil is entitled to omit the 2024 Proposal from its proxy statement under Rule 14a-8(i)(12) because it addresses substantially the same subject matter as the 2022 Proposal and the 2023 Proposal, and the most recent vote, in 2023, was less than 15 percent of the votes cast.

101.     In its 2022 Proxy Statement (Item 6), ExxonMobil included the 2022 Proposal, which had been submitted by Follow This to ExxonMobil at its headquarters in Irving, Texas:

> <u>RESOLVED</u>: Shareholders request the Company to set and publish medium- and long-term targets to reduce the greenhouse gas (GHG) of the Company's operations and energy products (Scope 1, 2, and 3) consistent with the goal of the Paris Climate Agreement: to limit global warming to well below 2°C above pre-industrial levels and to pursue efforts to limit the temperature increase to 1.5°C.

102.     ExxonMobil shareholders rejected the 2022 Proposal. Only 27.1% of voting shareholders voted for it, while the remaining 72.9% of voting shareholders voted against it.

103.     A year later, in its 2023 Proxy Statement (Item 9), ExxonMobil included the 2023 Proposal, which had been submitted by Follow This—and Arjuna as a co-filer—to ExxonMobil at its headquarters in Irving, Texas, and addressed substantially the same subject matter as the 2022 Proposal:

> <u>RESOLVED</u>: Shareholders request the Company to set a medium-term reduction target covering the greenhouse gas (GHG) emissions of the use of its energy products (Scope 3) consistent with the goal of the Paris Climate Agreement: to limit global warming to well below 2°C above pre-industrial levels and to pursue efforts to limit the temperature increase to 1.5°C.

104.    Follow This's proposal garnered even less support during the 2023 proxy season. A mere 10.5% of votes cast supported the 2023 Proposal, and the remaining 89.5% rejected it.

105.    Defendants now seek—for the *third time*—to put forward a proposal that addresses substantially the same subject matter as the 2022 Proposal and the 2023 Proposal, which were overwhelmingly rejected by shareholders. The 2024 Proposal is:

> <u>RESOLVED</u>: Shareholders support the Company, by an advisory vote, to go beyond current plans, further accelerating the pace of emission reductions in the medium-term for its greenhouse gas (GHG) emissions across Scope 1, 2, and 3, and to summarize new plans, targets, and timetables.

106.    The 2024 Proposal is a textbook example of a "resubmission" that can be excluded under Rule 14a-8(i)(12). The fundamental goal of both the 2022 Proposal and the 2023 Proposal was to have ExxonMobil set certain GHG emission-reduction targets. This is precisely what the 2024 Proposal seeks to do.

107.    It is irrelevant that the wording is slightly different and the granular details of the three proposals vary slightly. Each addresses substantially the same subject matter and seeks the same end result. And each proposal aims to cause ExxonMobil to set certain GHG emissions targets that would fundamentally alter ExxonMobil's fossil fuel business.

108.    Under Rule 14a-8(i)(12)(ii), because the shareholders have voted on and rejected this proposal twice before, ExxonMobil is entitled to omit this third attempt if the most recent vote was "[l]ess than 15 percent of the votes cast." And as stated above, the most recent vote (*i.e.*, the 2023 Proposal) received only 10.5% of votes cast in favor, well below the required amount.

109.    In sum, ExxonMobil may omit the 2024 Proposal under Rule 14a-8(i)(12) because it addresses substantially the same subject matter as the proposals in 2022 and 2023 that were rejected by shareholders, and the most recent prior proposal received less than the required 15% of votes cast.

## CLAIM FOR RELIEF

110.    The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

111.    In accordance with 28 U.S.C. § 2201, an actual controversy exists among ExxonMobil, Arjuna, and Follow This.

112.    ExxonMobil is entitled to a declaration that it may properly exclude the 2024 Proposal from its proxy statement under Rule 14a-8(i)(7) and (i)(12) and not present it for a shareholder vote at ExxonMobil's 2024 annual shareholder meeting.

## REQUEST FOR SPEEDY HEARING

113.    In accordance with Federal Rule of Civil Procedure 57, ExxonMobil requests a speedy hearing.

114.    ExxonMobil's annual shareholder meeting is scheduled for May 29, 2024.

115.    ExxonMobil must finalize its proxy statement no later than March 20, 2024 so that it can be printed and sent to its shareholders and filed with the SEC 40 calendar days before the annual shareholder meeting.

116.    Accordingly, ExxonMobil must know by March 19, 2024 whether it may exclude the 2024 Proposal from its proxy statement.

## PRAYER FOR RELIEF

WHEREFORE, ExxonMobil respectfully requests that judgment be entered in its favor and against Arjuna and Follow This by:

a.      Declaring that ExxonMobil may properly exclude the 2024 Proposal from its proxy statement under Rule 14a-8(i)(7) and (i)(12) and not present it for a shareholder vote at ExxonMobil's 2024 annual shareholder meeting;

b.      Awarding ExxonMobil its costs, attorneys' fees, and expenses; and

c.      Entering such other and further relief as the Court may deem just and proper.

Dated: January 21, 2024                          Respectfully submitted,


Gregg J. Costa                                   /s/ *Mark W. Rasmussen*
Texas State Bar No. 24028160                     Mark W. Rasmussen
David Woodcock                                   Texas State Bar No. 24086291
Texas State Bar No. 24028140                     Jonathan D. Guynn
GIBSON, DUNN & CRUTCHER                           Texas State Bar No. 24120232
2001 Ross Avenue, Suite 2100                      JONES DAY
Dallas, TX 75201-2923                            2727 North Harwood Street
Telephone:  +1.214.698.3211                      Dallas, TX 75201-1515
Facsimile:  +1.214.571.2914                      Telephone:  +1.214.220.3939
E-mail: gcosta@gibsondunn.com                    Facsimile:  +1.214.969.5100
E-mail: dwoodcock@gibsondunn.com                 E-mail: mrasmussen@jonesday.com
                                                 E-mail: jguynn@jonesday.com

                                                 Noel J. Francisco (*pro hac vice* forthcoming)
                                                 D.C. Bar No. 464752
                                                 Brett A. Shumate (*pro hac vice* forthcoming)
                                                 D.C. Bar No. 974673
                                                 Megan Lacy Owen
                                                 D.C. Bar No. 1007688
                                                 JONES DAY
                                                 51 Louisiana Avenue, N.W.
                                                 Washington, D.C. 20001-2113
                                                 Telephone:  +1.202.879.3939
                                                 Facsimile:  +1.602.626.1700
                                                 E-mail: njfrancisco@jonesday.com
                                                 E-mail: bshumate@jonesday.com
                                                 E-mail: mlacyowen@jonesday.com


ATTORNEYS FOR PLAINTIFF


26