**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **EXXON MOBIL** | § | |
| **CORPORATION,** | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | **CASE NO. 4:24-CV-00069-P** |
| | § | |
| **ARJUNA CAPITAL, LLC and** | § | |
| **FOLLOW THIS,** | § | |
| | § | |
| *Defendants* | § | |

<u>**ARJUNA CAPITAL, LLC'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**</u>

**FOLEY HOAG LLP &**
**STINSON LLP**

Matthew E. Miller (*pro hac vice*
pending) MA Bar No. 655544
mmiller@foleyhaog.com

Veronica M. Renzi (*pro hac vice*
pending) DC Bar No. 371654
Foley Hoag LLP
vrenzi@foleyhoag.com

Ross Mortillaro
State Bar No. 24027531
ross.mortillaro@stinson.com

Zachary Ford
State Bar No. 24116373
zach.ford@stinson.com

**ATTORNEYS FOR DEFENDANT**
**ARJUNA CAPITAL, LLC**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

RELEVANT FACTS AND ALLEGATIONS............................................................................ 2

PROCEDURAL HISTORY........................................................................................................ 5

ARGUMENT .............................................................................................................................. 6

LEGAL STANDARD................................................................................................................. 7

**I.   Exxon's Complaint Must Be Dismissed for Lack of Subject Matter Jurisdiction.**........... 8

   A.   Exxon's Claim is Moot. ............................................................................................... 9

   B.   No Exception to the Mootness Doctrine Applies to Save Exxon's Claim..................... 11

      1.   The "Voluntary Cessation Doctrine" Does Not Apply Because the Challenged Conduct Will Not Recur. ..................................................................................... 11

      2.   The Challenged Conduct is Not Capable of Repetition Yet Evading Review. .......... 15

**II.   Exxon Has Failed to Allege Personal Jurisdiction.**........................................................... 18

CONCLUSION......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acheson Hotels, LLC v. Laufer*,
144 S. Ct. 18 (2023)...............................................................................................12

*Allen v. Wright*,
468 U.S. 737 (1984).................................................................................................9

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013).......................................................................................... *passim*

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997)...................................................................................................9

*Barrera-Montenegro v. United States*,
74 F.3d 657 (5th Cir. 1996) .....................................................................................8

*Bauer v. Texas*,
341 F.3d 352 (5th Cir. 2003) ...................................................................................9

*Bazzrea v. Mayorkas*,
No. 3:22-cv-265, 2023 U.S. Dist. LEXIS 101876 (S.D. Tex. 2023)......................10

*Busch v. Buchman, Buchman & O'Brien, Law Firm*,
11 F.3d 1255 (5th Cir. 1994) ..........................................................................18, 19

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) (Roberts, CJ, dissenting) ................................................13, 15

*Cent. Freight Lines Inc. v. APA Transp. Corp.*,
322 F.3d 376 (5th Cir. 2003) ...................................................................................8

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013).........................................................................................14, 15

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006).................................................................................................9

*Daves v. Dall. Cty.*,
64 F.4th 616 (5th Cir. 2023) ....................................................................................8

*EMC Corp. v. Chevedden*,
4 F. Supp. 3d 330 (D. Mass. 2014) .......................................................................11

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013)...................................................................................9

*Hamann v. Smith*,
    No. 4:23-CV-098-P, 2023 U.S. Dist. LEXIS 136618 (N.D. Tex. Aug. 7, 2023) ...................10

*Hillesheim v. Holiday Stationstores, Inc.*,
    903 F.3d 786 (8th Cir. 2018) .........................................................10

*Honig v. Doe*,
    484 U.S. 305 (1988).........................................................................8

*Jackson v. Mayorkas*,
    No. 4:22-cv-0825-P, 2023 U.S. Dist. LEXIS 144078 (N.D. Tex. Aug. 17, 2023) ...................................................................................14

*James v. Hegar*,
    86 F.4th 1076 (5th Cir. 2023) .................................................13, 15

*KBR Inc. v. Chevedden*,
    776 F. Supp. 2d 415 (S.D. Tex. 2011) ..........................................19

*KBR v. Chevedden*,
    478 F. App'x 213 (5th Cir. 2012) ................................................11

*Lewis v. Continental Bank Corp.*,
    494 U.S. 472 (1990).........................................................................9

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983)..................................................................15, 16

*Luallen v. Higgs*,
    277 F. App'x 402 (5th Cir. 2008) ................................................19

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)....................................................................9, 14

*Luv n' care, Ltd. v. Insta-Mix, Inc.*,
    438 F.3d 465 (5th Cir. 2006) ........................................................8

*MedImmune Inc. v. Genetech, Inc.*,
    549 U.S. 118 (2007)....................................................................9, 17

*Monk v. Huston*,
    340 F.3d 279 (5th Cir. 2003) ......................................................14

*Murphy v. Hunt*,
    455 U.S. 478 (1982) (*per curiam*) ................................................9

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)............................................................................................12

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
    833 F.2d 583 (5th Cir. 1987) ............................................................................14

*New York City Employees' Ret. Sys. v. Dole Food Co.*,
    969 F.2d 1430 (2d Cir. 1992)............................................................................16

*Okpalobi v. Foster*,
    244 F.3d 405 (5th Cir. 2001) (*en banc*) ..............................................................8

*Pacific Life Ins. Co. v. Spurgeon*,
    319 F. Supp. 2d 1108 (C.D. Cal. 2004) ...........................................................19

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
    253 F.3d 865 (5th Cir. 2001) ..............................................................................8

*Roark & Hardee LP v. City of Austin*,
    522 F.3d 533 (5th Cir. 2008) ..............................................................................9

*U.S. ex rel. Sonnier v. Standard Fire Ins. Co.*,
    84 F. Supp. 3d 575 (S.D. Tex. 2015) .................................................................8

*In re Southern Recycling, L.L.C.*,
    982 F.3d 374 (5th Cir. 2020) ..............................................................................7

*Trust Co. of La. v. N.N.P. Inc.*,
    104 F.3d 1478 (5th Cir. 1997) ..........................................................................19

*Turner v. Rogers*,
    564 U.S. 431 (2011)....................................................................................11, 15

*U.S. Navy SEALs 1-26 v. Biden*,
    72 F.4th 666 (5th Cir. 2023) .............................................................................10

*Waste Connections, Inc. v. Chevedden*,
    554 F. App'x 334 (5th Cir. 2014) .....................................................................11

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)..........................................................................................17

*Yarls v. Bunton*,
    905 F.3d 905 (5th Cir. 2018) ............................................................................17

**Statutes**

28 U.S.C. § 2201.........................................................................................................5

28 U.S.C. § 2201(a) ..................................................................................................................17

Securities and Exchange Act Section 27, 15 U.S.C. § 78aa ........................................................18

**Other Authorities**

17 CFR § 240.14a-8 (c) ..............................................................................................................4

Financial Times, *Norway oil fund boss criticizes ExxonMobil's 'aggressive'*
    *climate suit*, (Feb. 8, 2024) ...............................................................................................17

Sec. & Exch. Com., *Shareholder Proposals: Staff Legal Bulletin No. 14L* (CF)
    (Nov. 3, 2021) .....................................................................................................................2

SEC Rule 14a-8(i)(12) ....................................................................................................2, 5, 9, 15

SEC Rule14a-8(i)(7) .......................................................................................................2, 5, 9, 15

U.S. Const., Art. III, § 2 ..............................................................................................................8

**BRIEF IN SUPPORT OF MOTION TO DISMISS**

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

PLEASE TAKE NOTICE that pursuant to Northern District of Texas Local Rule 7.1(d), Defendant Arjuna Capital, LLC files this, its brief in support of its Motion to Dismiss.

## INTRODUCTION

Exxon Mobil Corporation's ("Exxon") sole claim seeking a declaration that it may exclude a proposal submitted by Arjuna Capital, LLC ("Arjuna") and Follow This from its 2024 proxy statement is moot, as the proposal has been withdrawn, and Arjuna and Follow This have agreed not to resubmit the proposal or present it at any future Exxon shareholder meeting. There is therefore no "case" or "controversy" as required under Article III of the Constitution. In refusing to dismiss the case following the withdrawal, Exxon has laid bare its true intention – to challenge how the SEC interprets and applies its own proxy proposal rules, without actually confronting the SEC itself. Exxon may prefer litigating against parties like Arjuna and Follow This – who have fewer resources and whom Exxon can unfairly malign in its Complaint – over seeking a routine "no-action" letter from the SEC. Nevertheless, because there is no actual case or controversy, there is no Article III standing and the Court must dismiss the Complaint for lack of subject matter jurisdiction.

In addition, Exxon has failed to show this Court has personal jurisdiction over the defendants. Exxon is advancing the novel position that it can haul its shareholders into court anywhere in the United States merely for exercising their shareholder rights to submit a proxy proposal, even if the shareholders have no contact with Exxon's chosen jurisdiction. Exxon has no support for this argument, which runs contrary to the underlying purpose of the securities laws

1

– to protect investors.  With no other alleged basis for personal jurisdiction, the Complaint must

be dismissed.

**RELEVANT FACTS AND ALLEGATIONS**

Under the securities laws, shareholders who do not attend a company's annual shareholder

meeting can nevertheless have a say on matters presented for shareholders' consideration through

voting by proxy.  Complaint, ¶ 32.  U.S. public companies must distribute a proxy statement to

shareholders in advance of annual meetings containing, among other things, the items or initiatives

on which the shareholders are being asked to vote.  *Id.* at ¶ 33.  The SEC has promulgated Rule

14a-8 to provide shareholders with a means of presenting proposals for other shareholders'

consideration in the proxy statement.  *Id.* at ¶¶ 35-36.  Most shareholder proposals, including the

proposal at issue in this litigation, are advisory in nature and non-binding on the company.

According to the SEC, "[t]his process has become a cornerstone of shareholder engagement on

important matters."  Sec. & Exch. Com., *Shareholder Proposals: Staff Legal Bulletin No. 14L* (CF)

(Nov. 3, 2021).[1]  Rule 14a-8 sets forth several bases for exclusion of such proposals.  When

companies intend to exclude a shareholder proposal pursuant to Rule 14a-8, they often request

"no-action relief" from the SEC – assurance that the SEC staff will not recommend an enforcement

action based on the exclusion.  *Id.*  Exxon focuses its allegations in this case on the "Ordinary

Business Rule" (SEC Rule14a-8(i)(7)) and the "Resubmission Rule" (SEC Rule 14a-8(i)(12)) as

bases for exclusion.

Arjuna, a Registered Investment Advisor, is a limited liability company organized under

the laws of Delaware with a principal place of business in Durham, North Carolina and an office

in Manchester, Massachusetts.  As an investment manager and fiduciary, Arjuna has a long-

---

[1] https://www.sec.gov/corpfin/staff-legal-bulletin-14l-shareholder-proposals? (last visited February 6, 2024)

standing practice of engaging with companies on issues of environmental and social concern in service of better investment outcomes. On December 14, 2023, on behalf of two of its clients, Arjuna submitted a proposal concerning greenhouse gas emissions for consideration at Exxon's 2024 annual shareholder meeting scheduled for May 29, 2024 (the "Proposal"). Complaint, ¶ 66; App.001.[2] On December 15, 2023, Follow This, an association organized under the laws of the Netherlands with a principal place of business in Amsterdam, Netherlands, co-filed the Proposal, designating Arjuna as the lead filer. *Id.* at App.002.

The Proposal resolves that "Shareholders support the Company, by an advisory vote, to go beyond current plans, further accelerating the pace of emission reductions in the medium-term for its greenhouse gas (GHG) emissions across Scope 1, 2, and 3, and to summarize new plans, targets, and timetables." *See* Complaint, ¶¶ 8, 21; App.001. In its Complaint, Exxon, "one of the world's largest and most successful energy companies" (Complaint, ¶ 43), maligns Arjuna and Follow This as being driven by "an extreme agenda." Complaint, ¶ 1. But to paint that picture, Exxon quotes a small portion of the Proposal in its Complaint, selectively omitting the portions of the Proposal demonstrating it was intended to foster better investment outcomes by addressing the material threat that climate change poses to Exxon, its shareholders, and future investment returns across investor portfolios. The Proposal notes in the background section that Exxon's emission reduction targets are significantly below recommended targets deemed necessary to limit global warming to 1.5 degrees Celsius. App.001. Increases above 1.5 degrees Celsius "increase physical, transition, and systemic risks for companies like Exxon and investors alike." *Id.* In addition, the Proposal states that Exxon has fallen behind its peer companies, where "BP, TotalEnergies, Repsol, and Eni … have set more ambitious, medium-term emission reduction targets." *Id.* The Proposal further

---

[2] References to "App." are to the Appendix in Support of Arjuna Capital, LLC's Motion to Dismiss filed concurrently herewith.

explains that accelerating the pace of Exxon's emissions reduction efforts would benefit Exxon's business and bottom-line.  For example, "Exxon's cost of capital may substantially increase if it fails to control transition risks by significantly reducing absolute emissions."  *Id.*  Additionally, while Exxon currently plans to increase its oil and gas output by 10 percent, "peak global demand for coal, oil, and gas could be reached before 2030."  *Id.*  Thus, "continued oil and gas investments could lead to commodity oversupply, resulting in lower pricing, negatively impacting existing and new project revenue."  *Id.*

On December 22, 2023, Exxon provided separate notifications to Arjuna and Follow This of purported deficiencies with the Proposal, including whether Arjuna met certain eligibility requirements, and stating that Follow This had failed to provide proof of share ownership. Complaint, ¶ 68; App.003 – 024.  Exxon's notifications did not address the Ordinary Business Rule or Resubmission Rule.[3]  *Id.*  Arjuna responded to Exxon's notice on January 3, 2024. App.025.  Follow This did not respond to the notice providing proof of ownership, a technical deficiency that would ordinarily lead to exclusion of the co-filer at the SEC.

On January 9, 2024, Exxon's "ESG Manager" in Investor Relations sent an email to Arjuna inviting Arjuna to discuss the Proposal.  App.028.  Arjuna and Exxon scheduled a call for January 30, 2024.  App.027.  Before that call could take place, however, and without warning, Exxon filed this lawsuit on January 21, 2024, claiming for the first time that the Proposal violated the Resubmission Rule and Ordinary Business Rule.  Exxon's ESG Manager emailed Arjuna on January 22, 2023, stating "[i]n light of events over the last 24 hours, I will cancel our discussion currently scheduled for later this month."  App.027.

---

[3] SEC Rules do not require Exxon to address these purported deficiencies in its initial notice, only procedural deficiencies that a proponent can correct.  *See* 17 CFR § 240.14a-8 (c).

Exxon did not file a request for no-action relief with the SEC to request relief pursuant to the Ordinary Business Rule and Resubmission Rule, or to exclude Follow This based on its failure to provide proof of ownership, opting instead to name Follow This as a defendant in this lawsuit.

## PROCEDURAL HISTORY

Exxon filed its Complaint on January 21, 2024, asserting one claim under the Declaratory Judgment Act (28 U.S.C. § 2201).  Complaint [ECF No. 1], ¶¶ 110-112.  The sole claim for relief that Exxon requests in its Complaint is as follows:

> ExxonMobil is entitled to a declaration that it may properly exclude the 2024 Proposal from its proxy statement under Rule 14a-8(i)(7) and (i)(12) and not present it for a shareholder vote at ExxonMobil's 2024 annual shareholder meeting.

*Id.* at ¶ 112.  On January 25, 2024, Exxon filed a Motion to Set Expedited Summary Judgment Briefing Schedule ("Motion to Expedite").  ECF No. 11.  Exxon argued that an expedited briefing schedule was necessary to address "an urgent question: whether ExxonMobil may lawfully exclude [the Proposal] … from its proxy statement for its annual shareholder meeting scheduled for May 29, 2024."  ECF No. 12 at 1.

On January 29, 2024, Arjuna sent a letter to Exxon's legal counsel which stated:

> Arjuna Capital on behalf of Kimberly Indresano and Brian Robert Romer (the shareholders) hereby withdraws the shareholder proposal on greenhouse gas emissions submitted on December 14, 2023 for the 2024 annual general meeting of Exxon Mobil.  Arjuna and the shareholders waive the right to sue the company or complain to the SEC if the proposal does not appear on the proxy.  Arjuna and the shareholders will not refile the proposal with Exxon at any time in the future, and will not present the proposal on the floor of an annual meeting.

App.030.  Follow This also sent a letter to Exxon's counsel on January 29, 2024, likewise withdrawing the Proposal, waiving the right to sue Exxon if the Proposal did not appear on the proxy, and agreeing not to refile the Proposal with Exxon or to present the Proposal at an annual meeting.  App.031.

On February 1, 2024, Exxon withdrew its Motion to Expedite because Arjuna and Follow This withdrew the Proposal for the 2024 annual shareholder meeting. ECF No. 16. On February 2, 2024, the Court ordered Exxon to provide a status update, noting "the Court's understanding that this action was brought to litigate the very issue that [Exxon] now says is resolved: Defendants proposal for the annual shareholder meeting." Order [ECF No. 18]. The Court thus ordered Exxon to explain "what outstanding claims or issues are before the Court in this action." *Id.* ("as it stands now, the Court struggles to see what the ongoing case or controversy is in this matter given the only relief sought from the Court was a declaration that Exxon may exclude Defendants proposal from its annual shareholder meeting.").

Exxon filed its Status Update on February 5, 2024, indicating it intended to proceed with the case to obtain a "ruling from this Court on the application of the Ordinary Business Exclusion and the Resubmission Exclusion to the 2024 Proposal," notwithstanding that the Proposal has been withdrawn. ECF No. 20 at 2.

## ARGUMENT

Exxon's sole claim seeking a declaration that the Proposal may be excluded from its 2024 proxy statement is moot. Arjuna and Follow This have withdrawn the Proposal and have agreed not to sue Exxon if the Proposal does not appear in Exxon's proxy statement. Effectively, the Proposal no longer exists. There is no need for the Court to declare that a nonexistent shareholder proposal may be excluded from Exxon's proxy statement. Exxon will suffer no actual or imminent injury in fact due to the withdrawn Proposal, and thus there is no case or controversy as required by Article III of the Constitution.

While there are recognized exceptions to mootness, none of the relevant exceptions apply to save Exxon's claim because they require a reasonable basis to conclude that the challenged activity will recur. That basis is absent here, as Arjuna and Follow This have agreed not to

resubmit the Proposal for consideration in any future Exxon proxy or to raise it at any Exxon annual meeting. Because Exxon will never have to address the Proposal again, these exceptions to mootness do not apply.

Exxon has recently revealed its true aim with this litigation – to challenge the SEC's interpretation and application of its Rules regarding shareholder proxy proposals and to obtain an advisory opinion without confronting the SEC directly. *See* Status Update, ECF No. 20 at 1. Rather than seek no-action relief from the SEC, Exxon has eagerly pursued this litigation against parties with fewer resources whom it can vilify in its pleadings, effectively silencing the concerns of its shareholders in the process. Exxon's desire to use the courts to fight a proxy battle over SEC proxy rules, however, does not an Article III case or controversy make. Exxon's Complaint should be dismissed for lack of subject matter jurisdiction.

Additionally, Exxon has not established personal jurisdiction over Arjuna and Follow This. Exxon's novel theory of personal jurisdiction is that it may haul its shareholders into any court in the United States to seek a declaration that Exxon has not violated the securities laws. As sole support for this novel jurisdictional theory, Exxon points to the nationwide service of process provision in the Securities and Exchange Act of 1934 (the "Exchange Act"). Nothing in the Exchange Act, however, supports Exxon's position that shareholders can be sued anywhere in the country merely for exercising their shareholder rights. Not only is Exxon's position unsupported in the text of the Exchange Act, it runs contrary to the Exchange Act's central purpose – the protection of investors. As Exxon has not carried its burden of demonstrating that the Court has personal jurisdiction, the Complaint should be dismissed.

## LEGAL STANDARD

Exxon must prove by a preponderance of the evidence that the Court has jurisdiction to hear this matter. *See In re Southern Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020). "A

district court may dismiss a case under Rule 12(b)(1) based on '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Id.* (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). *See also U.S. ex rel. Sonnier v. Standard Fire Ins. Co.*, 84 F. Supp. 3d 575, 583 (S.D. Tex. 2015) ("When examining a factual challenge to subject-matter jurisdiction, which does not implicate the merits of a plaintiff's cause of action, the district court has substantial authority to weigh the evidence and satisfy itself as to the existence of its power to hear the case.") (internal quotation marks omitted).

In response to a Rule 12(b)(2) challenge to a court's personal jurisdiction over a nonresident defendant, the plaintiff bears the burden of establishing that the court has jurisdiction. *See Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The court must accept as true the party's uncontroverted allegations and resolve any factual conflicts in favor of the party seeking to invoke the court's jurisdiction. *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). The court need not, however, credit conclusory allegations. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

## I.    Exxon's Complaint Must Be Dismissed for Lack of Subject Matter Jurisdiction.

Exxon's sole claim for declaratory judgment is moot and therefore must be dismissed for lack of subject matter jurisdiction. Article III of the Constitution limits federal court jurisdiction to "cases" and "controversies." U.S. Const., Art. III, § 2; *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001) (*en banc*). Under Article III, federal courts may only adjudicate "actual, ongoing controversies." *Daves v. Dall. Cty.*, 64 F.4th 616, 634 (5th Cir. 2023) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)). "The many doctrines that have fleshed out that 'actual controversy' requirement—standing, mootness, ripeness, political question, and the like—are 'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'"

*Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 541-42 (5th Cir. 2008) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)).  "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).

Additionally, the actual controversy between the parties must be present throughout the life of the litigation, not merely when the complaint is filed.  *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997).  "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot."  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-478 (1990)).  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III— when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013), quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (*per curiam*).

A.    Exxon's Claim is Moot.

The Proposal has been withdrawn and Arjuna and Follow This have agreed not to sue Exxon if the Proposal is not included in the 2024 proxy statement or presented for a vote at the 2024 annual meeting.  Exxon thus has no need for a declaration "that it may properly exclude the 2024 Proposal from its proxy statement under Rule 14a-8(i)(7) and (i)(12) and not present it for a shareholder vote at ExxonMobil's 2024 annual shareholder meeting" – the only relief Exxon has requested.  As Exxon is under no threat of "imminent injury in fact fairly traceable to the challenged action" as required for Article III standing, its claim must be dismissed as moot.  *See MedImmune Inc. v. Genetech, Inc.*, 549 U.S. 118, 128 n.8 (2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  *See also Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003)

("the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury").

Exxon has tacitly conceded that it is no longer under any imminent threat of injury from the Proposal (assuming *arguendo* it ever was). Before the withdrawal, Exxon moved the Court to set an expedited briefing schedule, which it argued was necessary because without a declaration from the Court before the proxy statement went to print, Exxon would be forced to include the Proposal with a disclaimer that it may not be presented for a shareholder vote, resulting in shareholder confusion, diversion of management's attention and a waste of shareholder resources. ECF No. 12 at 3. After the Proposal was withdrawn, however, Exxon withdrew its request for an expedited briefing schedule, conceding that Exxon is no longer under any threat of injury or compulsion to include the Proposal in its proxy statement. Thus, as evidenced by Exxon's own actions here, there is no continuing controversy for the Court to address. *See U.S. Navy SEALs 1-26 v. Biden*, 72 F.4th 666, 672 (5th Cir. 2023) ("There is no need to enjoin policies that no longer exist."); *Hillesheim v. Holiday Stationstores, Inc.*, 903 F.3d 786, 791 (8th Cir. 2018) (a claim is moot "when changed circumstances already provide the requested relief and eliminate the need for court action."); *Bazzrea v. Mayorkas*, No. 3:22-cv-265, 2023 U.S. Dist. LEXIS 101876, *13-14 (S.D. Tex. 2023) (noting the challenged vaccine "mandates have been rescinded, so there is no reason for the court to declare them unconstitutional or unlawful, nor enjoin the implementation of the mandates"); *Hamann v. Smith*, No. 4:23-CV-098-P, 2023 U.S. Dist. LEXIS 136618, at *4 (N.D. Tex. Aug. 7, 2023) ("Hamann has received the 365 days of FSA credits toward release which is the same relief she requested in the petition. The Court cannot grant her any further relief. Therefore, her claim is moot and must be dismissed.").

Because the withdrawal of the Proposal has removed any threat of imminent injury, other cases analyzing Article III standing to litigate challenged shareholder proposals that were not withdrawn are inapposite. *See, e.g., Waste Connections, Inc. v. Chevedden*, 554 F. App'x 334, 335 (5th Cir. 2014); *KBR v. Chevedden*, 478 F. App'x 213, 215 (5th Cir. 2012) (same).[4] *But see EMC Corp. v. Chevedden*, 4 F. Supp. 3d 330, 337 (D. Mass. 2014) (where shareholders promised not to file suit against EMC if their proposal was excluded from the proxy statement, "EMC has not carried its burden of demonstrating that … it would face an "imminent injury in fact" attributable to the [shareholders]" if it excluded their proposal).

B.     No Exception to the Mootness Doctrine Applies to Save Exxon's Claim.

Exxon cannot overcome its Article III deficiency based on any relevant exception to the mootness doctrine.  Both the "voluntary cessation doctrine" and the "capable of repetition yet evading review" exception to mootness require a finding that the challenged conduct is likely to recur.  *See Already*, 568 U.S. at 92 (voluntary cessation); *Turner v. Rogers*, 564 U.S. 431, 439-440 (2011) (capable of repetition yet evading review).  There is no basis for such a finding here.

1.     The "Voluntary Cessation Doctrine" Does Not Apply Because the Challenged Conduct Will Not Recur.

Where a case is moot because of a party's voluntary cessation of the challenged conduct, the party must show that the conduct "could not reasonably be expected" to resume.  *Already*, 568 U.S. at 92.  Arjuna and Follow This easily clear that hurdle, as their agreement to not only withdraw the Proposal for 2024, but also forego resubmitting the Proposal to Exxon in the future, establish that the challenged conduct will not occur.

---

[4] The *KBR* and *Waste Connections* cases are unpublished and thus are not binding precedent in any event. *See Waste Connections*, 554 F. App'x at 335.

The Supreme Court's application of the voluntary cessation doctrine in *Already*, a case relied on by Exxon in its Status Update [ECF No. 20 at 3], is instructive.  In *Already*, Nike filed a claim alleging that Already's shoes violated a Nike trademark.  *Id.* at 88.  In response, Already counterclaimed that Nike's trademark was invalid.  *Id.*  In response, Nike dismissed its trademark claim against Already with prejudice and promised not to bring any related trademark claims against Already in the future.  *Id.* at 88-89.  Nike then argued that Already's counterclaim was moot.  *Id.* at 89.  The Supreme Court agreed with Nike, holding that Already's counterclaim was moot, and finding "that [Nike's] covenant encompasses all of [Nike's] allegedly unlawful conduct," and thus the "challenged conduct cannot reasonably be expected to recur."  *Id.* at 94-95.

The same reasoning applies here.  Arjuna and Follow This have foregone resubmitting the Proposal to Exxon in the future.  Having now reaffirmed their agreement in this case, Arjuna and Follow This "would be hard pressed to assert the contrary down the road," thus reinforcing the conclusion that the "challenged conduct" in this case will not recur.  *Already*, 568 U.S. at 94 (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position") (internal quotation marks omitted)).  *See also Acheson Hotels, LLC v. Laufer*, 144 S. Ct. 18, 22 (2023) (case was moot where "Plaintiff voluntarily dismissed her pending ADA cases [and] represented to this Court that she will not file any others.").  Given Arjuna and Follow This's promise not to resubmit the Proposal, and their reiteration of that promise in this litigation, Exxon's suggestion that they could in the future turn around and "submit a slightly modified but substantively identical proposal," perhaps in "coordination" with others, is wholly unfounded.  *See* ECF No. 20 at 2.  Indeed, engaging in the tactics that Exxon speculates about would no doubt prompt more litigation from Exxon, something

12

in which Arjuna and Follow This have demonstrated they have no interest.  Arjuna and Follow This's agreement to forego resubmitting the Proposal thus sufficiently demonstrates that the "challenged conduct cannot reasonably be expected to recur."  *Already*, 568 U.S. at 94-95.  *See also James v. Hegar*, 86 F.4th 1076, 1082 (5th Cir. 2023) (to have standing to request prospective relief, the "threat of future injury must be 'certainly impending'; mere allegations of possible future injury will not suffice").

While Exxon argues that Arjuna and Follow This "have not conceded that the 2024 Proposal is properly excluded under the Ordinary Business Exclusion or the Resubmission Exclusion" (ECF No. 20 at 2), such a concession is unnecessary.  In *Already*, Nike did not concede that its trademark was invalid.  *Already*, 568 U.S. at 88.  Already argued that as a result, "Nike's trademarks will now hang over Already's operations like a Damoclean sword."  *Already*, 568 U.S. at 96.  The Supreme Court rejected that argument because Nike's covenant not to sue was enough, even absent a concession that its trademark was invalid, to demonstrate the conduct would not recur, and Already's suggestions of hypothetical future harms notwithstanding Nike's covenant were too speculative to support Article III standing.  *Id.* at 96-97.  *See also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 179-80 (2016) (Roberts, CJ, dissenting) ("This Court has long held that when a defendant unilaterally remedies the injuries of the plaintiff, the case is moot—even if the plaintiff disagrees and refuses to settle the dispute, and even if the defendant continues to deny liability.").[5]

---

[5] The majority opinion did not disagree with the analysis in Chief Justice Roberts' dissent as it related to claims seeking equitable prospective relief like declaratory judgments, but held that for claims seeking damages, an unaccepted offer to make the plaintiff whole with the payment of money alone is not enough to render a case moot. *Campbell-Ewald Co.*, 577 U.S. at 174-75 (noting Chief Justice Roberts relied on *Already, LLC* and other cases involving prospective relief, and stating "whether a claim for prospective relief is moot is different from the issue in this case, which involves claims for damages to remedy past harms.").

Exxon now attempts to rely on vague and imagined scenarios involving future hypothetical shareholder proposals to suggest the presence of Article III standing.  As the Supreme Court did in *Already*, this Court should reject that argument.  In its Status Update (ECF No. 20), Exxon prognosticates that in the future, shareholders may submit proposals that could address "substantially the same subject matter" as the Proposal, or perhaps relate in some other way to Exxon's "ordinary business operations" in violation of SEC Rules.  Status Update [ECF No. 20] at 2.  However, the voluntary cessation doctrine does not allow "the plaintiff to rely on theories of Article III injury that would fail to establish standing in the first place."  *Already*, 568 U.S. at 96.  Had Exxon originally filed a complaint seeking a declaration that it need not include in future proxy statements hypothetical future proposals to be submitted by unknown shareholders, that complaint would rightly be dismissed for lack of Article III standing.  *See Lujan*, 504 U.S. at 560-61 (standing requires among other things an "injury in fact" that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical").[6]  *See also Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003) ("A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987)).  Thus, there is no basis to conclude that the challenged conduct here will recur, and Exxon cannot point to the hypothetical actions of other parties down the road to avoid dismissal on mootness grounds.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"); *Jackson v. Mayorkas*, No. 4:22-cv-0825-P, 2023 U.S. Dist. LEXIS 144078, at *5 (N.D. Tex. Aug. 17, 2023) (to have standing

---

[6] When redress of a plaintiff's claim "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict,… it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury."  *Lujan*, 504 U.S. at 562.

to seek prospective injunctive or declaratory relief, there must be "a real-and-immediate threat of repeated injury in the future").

Moreover, in its Status Update, Exxon does not explain how the Court should analyze the hypothetical future proposals under the two SEC Rules that Exxon cites in its request for relief. For example, how should the Court determine whether a hypothetical proposal "addresses substantially the same subject matter" as a previously rejected proposal, as required under SEC Rule 14a-8(i)(12), without being able to examine the language of the proposal itself?  And how should the Court begin to analyze whether a proposal that has yet to be drawn and submitted interferes with "a matter relating to the company's ordinary business operations" as required by SEC Rule 14a-8(i)(7)?  Extending Exxon's argument to its logical conclusion illustrates why courts must avoid issuing advisory opinions in the first place.  *See Campbell-Ewald Co*, 577 U.S. at 183-84 (Roberts, C.J., dissenting) ("It is the necessity of resolving a live dispute that reconciles the exercise of profound power by unelected judges with the principles of self-governance, ensuring adherence to the proper—and properly limited—role of the courts in a democratic society.") (internal quotation marks omitted).  In any event, Exxon has not asked the Court to issue any prospective relief as to future hypothetical shareholder proposals (nor could they), thus further illustrating the lack of any actual controversy for the Court to address here.  *See James*, 86 F.4th at 1082 (citing *Clapper*, 568 U.S. at 416 (no standing where there was no "impending future injury" and the "prospective relief in no way redresses Plaintiffs' alleged injuries").

2.     The Challenged Conduct is Not Capable of Repetition Yet Evading Review.

Exxon likewise cannot rely on the exception to the mootness doctrine applied where the challenged conduct is "capable of repetition yet evading review" because this exception also requires that there be "a reasonable expectation that the same complaining party will be subjected to the same action again."  *Turner*, 564 U.S. at 439-440.  *See also Los Angeles v. Lyons*, 461 U.S.

95, 109 (1983) (jurisdiction on the basis that a dispute is "capable of repetition, yet evading review" is limited to "exceptional situations").  For the reasons already stated, Exxon will not have to respond to the Proposal again, and thus will not be subjected to the same challenged activity in the future.

In addition, the "capable of repetition yet evading review" exception does not apply because it also requires a demonstration that "the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." *Id.*  Exxon has argued in this case that it is not only possible but commonplace for courts to address the merits of arguments concerning shareholder proposals before companies need to send their annual statements to the printer.  *See* Memorandum in Support of Plaintiff's Motion to Expedite [ECF No. 12] at 2 ("District courts often order expedited proceedings in shareholder-proposal suits like this," citing cases).  *See also New York City Employees' Ret. Sys. v. Dole Food Co.*, 969 F.2d 1430, 1435 (2d Cir. 1992) ("there should be ample time for full review of the case while it remains a live controversy" because shareholders must submit proxy proposals at least 120 days before the proxy is released under SEC Rules).

While it no longer has any need for the relief it requests in its Compliant, Exxon has now revealed its true purpose in bringing this lawsuit – challenging how the SEC interprets and applies its proxy submission Rules without having to go through the SEC to do so.  *See* Status Update [ECF No. 20] at 1 ("ExxonMobil filed this case because year after year Defendants submit shareholder proposals under the federal securities laws to advance their personal agenda … Yet the [SEC] permits this type of conduct under its current application of the rules.").  As Exxon

recently admitted, "[w]e hope our suit motivates the SEC to go back to applying the proxy rules as they were written, not as they've been interpreting them over the last few years."[7]

Avoiding the SEC, Exxon would apparently rather litigate its policy preferences against Arjuna and Follow This, who have fewer resources and who Exxon can unfairly malign in its pleadings. Indeed, the pre-litigation tactics Exxon employed here – scheduling a call with Arjuna to discuss the Proposal only to sandbag Arjuna with a lawsuit before that call could occur – demonstrates how desperately Exxon wanted to have this policy debate against the parties, and in the venue, of its choosing. Exxon may desire to use this lawsuit as a vehicle to achieve its policy preferences regarding shareholder proposals, but that is patently insufficient to satisfy Article III of the Constitution. *See Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) ("No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.") (quoting *Already, LLC*, 568 U.S. at 91). Regardless of Exxon's true aims, its claim for a declaratory judgment regarding the now-withdrawn Proposal is moot and must be dismissed for lack of subject matter jurisdiction.

Finally, for the foregoing reasons, even if Exxon could demonstrate Article III standing, the Court should exercise the discretion afforded by the Declaratory Judgment Act to decline granting the requested relief. *See MedImmune*, 549 U.S. at 136 (the Declaratory Judgment Act "has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'") (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).[8]

---

[7] Financial Times, *Norway oil fund boss criticizes ExxonMobil's 'aggressive' climate suit*, (Feb. 8, 2024), https://www.ft.com/content/58952fc6-9b52-4e22-8fd5-8c24ddd9f7b2, last visited February 9, 2024.
[8] "The Declaratory Judgment Act provides that a court 'may declare the rights and other legal relations of any interested party,' 28 U.S.C. § 2201(a) (emphasis added), not that it must do so." *MedImmune*, 549 U.S. at 136.

## II.    Exxon Has Failed to Allege Personal Jurisdiction.

Exxon's Complaint should also be dismissed for the independent reason that Exxon has failed to establish personal jurisdiction.  As its sole basis for personal jurisdiction, Exxon points to Section 27 of the Securities and Exchange Act, 15 U.S.C. § 78aa.  Complaint, ¶ 24.  Section 27 of the Exchange Act provides in part:

> Any suit or action *to enforce any liability or duty created by this chapter or rules and regulations thereunder* . . . may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C. § 78aa (emphasis added).  As Section 27 of the Exchange Act contains a nationwide service of process provision, courts have interpreted Section 27 to extend personal jurisdiction over defendants alleged to have engaged in violations of the Exchange Act to anywhere in the United States, so long as the defendant has minimum contacts with the United States.  *See Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994).  Exxon apparently believes that Section 27 authorizes it to haul its shareholders into court anywhere in the United States, regardless of whether those shareholders have any contact with Exxon's chosen jurisdiction, to seek a declaration that Exxon has not violated the securities laws.

Exxon's position, however, is contrary to both the letter and spirit of Section 27.  First, Exxon is not seeking to "enforce any liability or duty created by this chapter or rules and regulations thereunder."  15 U.S.C. § 78aa.  Rather, Exxon requests a declaration that it is not required to include the (withdrawn) Proposal in its proxy statement.  Complaint, ¶ 112.  Because Exxon is not attempting to "enforce any liability or duty" created by the securities laws or rules and regulations, Section 27 does not apply.  Second, Exxon's position is contrary to the intent of the Exchange Act, which is to protect investors, not to subject those investors to litigation

18

anywhere in the country merely for exercising their shareholder rights. *See Pacific Life Ins. Co. v. Spurgeon*, 319 F. Supp. 2d 1108, 1112–1113 (C.D. Cal. 2004).

In *Pacific Life Ins.*, the Central District of California held that Section 27 did not authorize a company to bring a Declaratory Judgment Act claim against a shareholder anywhere in the United States. *Id.* In finding no personal jurisdiction, the Court reasoned,

> [i]f the intent of the Securities Acts is to provide for the fullest prosecution of those statutes against alleged violators, it hardly serves those ends to allow the alleged violators the right to pick their victims and the time and place of their prosecution without regard to usual constitutional protections.

*Id.* That reasoning applies with equal force here, and the Court should decline Exxon's invitation to pervert the securities laws – intended to protect investors – to allow Exxon to haul those investors into court anywhere in the United States.

The court should also decline to follow the holding of *KBR Inc. v. Chevedden*, 776 F. Supp. 2d 415 (S.D. Tex. 2011). As in *Pacific Life*, *KBR* involved a corporate plaintiff bringing a Declaratory Judgment Act claim against a shareholder, requesting a declaration that it could properly exclude the shareholder's proxy proposal under the securities laws. In finding personal jurisdiction over the individual shareholder based on Section 27 of the Exchange Act, however, the court in *KBR* cited cases that did not involve anywhere near similar circumstances. *KBR*, 776 F. Supp. 2d at 423. Rather, the cases on which the court in *KBR* relied concerned run-of-the-mill challenges to personal jurisdiction by defendants alleged to have engaged in securities fraud in violation of the Exchange Act, i.e. suits to "enforce a liability" under the Exchange Act. *See Id.* (citing *Busch*, 11 F.3d at 1256 (alleging defendant's offering memorandum contained material misrepresentations in violation of Rule 10b-5 of the Exchange Act); *Trust Co. of La. v. N.N.P. Inc.*, 104 F.3d 1478, 1486 (5th Cir. 1997) (alleging defendant engaged in securities fraud in violation of the Exchange Act); *Luallen v. Higgs*, 277 F. App'x 402, 404 (5th Cir. 2008) (defendant

alleged to have engaged in federal securities fraud in violation of the Exchange Act). These cases thus provide no support for the *KBR* court's holding as to personal jurisdiction over shareholders in a Declaratory Judgment Act case.

Exxon has failed to establish any basis for personal jurisdiction, and the Complaint should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, Arjuna respectfully requests that the Court dismiss the Complaint in its entirety.

20

ARJUNA CAPITAL, LLC, Defendant

By Its Attorneys,

February 12, 2024

*s/ Ross Mortillaro*
Ross Mortillaro
State Bar No. 24027531
Email: ross.mortillaro@stinson.com
Zachary Ford
State Bar No. 24116373
Email:  zach.ford@stinson.com
Stinson LLP
2200 Ross Avenue
Dallas, TX 75201
Tel: (214) 560-2224

Matthew E. Miller
MA Bar. No. 655544
(*pro hac vice* pending)
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
Tel: (617) 832-1000
Email: mmiller@foleyhaog.com

Veronica M. Renzi
DC Bar No. 371654
(*pro hac vice* pending)
Foley Hoag LLP
1717 K Street NW
Washington, DC 20006
Tel: (202) 223-1200
Email: vrenzi@foleyhoag.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of February, 2024, a true and correct copy of the above and foregoing document has been served upon all counsel in accordance with the Federal Rules of Civil Procedure.

/s/ Ross Mortillaro
Ross Mortillaro