**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 4:24-cv-00069-P |
| | § | |
| ARJUNA CAPITAL, LLC and FOLLOW THIS, | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

**EXXON MOBIL CORPORATION'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 3

I.      EXXONMOBIL .................................................................................................. 3

II.     THE SEC'S PROXY RULES ............................................................................. 3

III.    FOLLOW THIS AND ARJUNA ABUSE THE PROXY RULES TO PROMOTE
THEIR SOCIAL CAUSES. ................................................................................ 4

IV.   THE DEFENDANTS' 2024 PROPOSAL FOLLOWS A LONG LINE OF
PROPOSALS DESIGNED TO ADVANCE DEFENDANTS' SOCIAL CAUSES
RATHER THAN ENHANCE SHAREHOLDER RETURNS. ........................... 6

V.    PROCEDURAL HISTORY ................................................................................ 7

LEGAL STANDARD ................................................................................................ 9

ARGUMENT ............................................................................................................. 9

I.      THE COURT HAS SUBJECT-MATTER JURISDICTION ............................. 9

     A.    DEFENDANTS HAVE NOT MADE "ABSOLUTELY CLEAR" THAT
         THEIR CONDUCT WILL NOT RECUR. ............................................. 10

          1.    DEFENDANTS HAVE FAILED TO SHOW THEY WILL NOT
              SUBMIT A SLIGHTLY MODIFIED BUT SUBSTANTIVELY
              IDENTICAL PROPOSAL TO EXXONMOBIL NEXT YEAR. ............ 11

          2.    DEFENDANTS STILL DEFEND THE LEGALITY OF THEIR
              PROPOSAL. ....................................................................................... 15

          3.    DEFENDANTS TIMED THE WITHDRAWAL TO THWART
              JUDICIAL REVIEW. ........................................................................ 15

     B.    THE COURT CAN STILL AWARD EFFECTUAL RELIEF ............................ 16

II.     THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS. ................ 19

III.    IN THE ALTERNATIVE, THE COURT SHOULD AUTHORIZE
JURISDICTIONAL DISCOVERY. ..................................................................... 21

CONCLUSION ............................................................................................................ 24

# TABLE OF AUTHORITIES

Page

CASES

*Acheson Hotels, LLC v. Laufer,*
  601 U.S. 1 (2023).................................................................................12

*Already, LLC v. Nike, Inc.,*
  568 U.S. 85 (2013)......................................................................... passim

*Apache Corp. v. Chevedden,*
  696 F. Supp. 2d 723 (S.D. Tex. 2010) ...................................................3

*Ashford Inc. v. Unite Here,*
  No. 3:15-cv-0262-M, 2015 WL 11121019 (N.D. Tex. May 12, 2015) ..................................22

*Busch v. Buchman, Buchman & O'Brien, Law Firm,*
  11 F.3d 1255 (5th Cir. 1994) ...........................................................19, 20

*Campinha-Bacote v. Turner,*
  No. 3:13-CV-1195-G, 2014 WL 923652 (N.D. Tex. Mar. 10, 2014).....................................14

*Chafin v. Chafin,*
  568 U.S. 165 (2013)....................................................................15, 17

*Christopher Vill., Ltd. P'ship v. Retsinas,*
  190 F.3d 310 (5th Cir. 1999) .............................................................17

*City of L.A. v. Lyons,*
  461 U.S. 95 (1983).......................................................................11

*City of Mesquite v. Aladdin's Castle, Inc.,*
  455 U.S. 283 (1982).....................................................................10

*Ciudadanos Unidos De San Juan v. Hidalgo Cnty. Grand Jury Comm'rs,*
  622 F.2d 807 (5th Cir. 1980) .............................................................11

*Crawford v. Hinds Cnty. Bd. of Supervisors,*
  1 F.4th 371 (5th Cir. 2021) ..............................................................11

*Dierlam v. Trump,*
  977 F.3d 471 (5th Cir. 2020) .........................................................16, 17

i

*Donovan v. Cunningham,*
    716 F.2d 1455 (5th Cir. 1983) ..............................................................................13

*Franciscan All., Inc. v. Becerra,*
    47 F.4th 368 (5th Cir. 2022) ................................................................................18

*Freedom From Religion Found., Inc. v. Abbott,*
    58 F.4th 824 (5th Cir. 2023) ................................................................................14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000)...............................................................................................10

*In re MPF Holdings US LLC,*
    701 F.3d 449 (5th Cir. 2012) ..........................................................................9, 21

*Isidor Paiewonsky Asoscs., Inc. v. Sharp Props., Inc.,*
    998 F.2d 145 (3d Cir. 1993)..................................................................................16

*K.P. v. LeBlanc,*
    729 F.3d 427 (5th Cir. 2013) ..................................................................9, 10, 14

*KBR Inc. v. Chevedden,*
    478 F. App'x 213 (5th Cir. 2012) ....................................................................9, 20

*KBR Inc. v. Chevedden,*
    776 F. Supp. 2d 415 (S.D. Tex. 2011) ............................................................19, 20

*Knox v. Serv. Emps. Int'l Union, Local 1000,*
    567 U.S. 298 (2012)...........................................................................................16, 17

*Lee v. Verizon Commc'ns, Inc.,*
    837 F.3d 523 (5th Cir. 2016) ..................................................................................9

*Netflix, Inc. v. Babin,*
    88 F.4th 1080 (5th Cir. 2023) ...................................................................13, 15, 16

*Nw. Envtl. Def. Ctr. v. Gordon,*
    849 F.2d 1241 (9th Cir. 1998) ..............................................................................16

*Opulent Life Church v. City of Holly Springs, Miss.,*
    697 F.3d 279 (5th Cir. 2012) ................................................................................16

*Pac. Life Ins. Co. v. Spurgeon,*
    319 F. Supp. 2d 1108 (C.D. Cal. 2004) ................................................................19

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1,*
    551 U.S. 701 (2007)...........................................................................................15

*Pavelka v. Pelican Inv. Holdings Grp., LLC,*
    No. 3:22-CV-0074-B, 2022 WL 3159275 (N.D. Tex. Aug. 8, 2022).....................21

*Polythane Sys., Inc. v. Marina Ventures Int'l Ltd.,*
    993 F.2d 1201 (5th Cir. 1993) .............................................................................20

*Pool v. City of Houston,*
    978 F.3d 307 (5th Cir. 2020) ...............................................................................16

*Rezaq v. Nalley,*
    677 F.3d 1001 (10th Cir. 2012) ...........................................................................16

*Skidmore v. Syntex Labs., Inc.,*
    529 F.2d 1244 (5th Cir. 1976) ........................................................................9, 21

*Speech First, Inc. v. Fenves,*
    979 F.3d 319 (5th Cir. 2020) ...........................................................7, 11, 14, 15

*Speech First, Inc. v. Schlissel,*
    939 F.3d 756 (6th Cir. 2019) ...............................................................................15

*Texas v. Biden,*
    20 F.4th 928 (5th Cir. 2021) ...............................................................................16

*Tucker v. Gaddis,*
    40 F.4th 289 (5th Cir. 2022) ..........................................................................11, 13

*Union de Empleados de Muelles de Puerto Rico, Inc. v. Int'l Longshoremen's
    Ass'n,*
    884 F.3d 48 (1st Cir. 2018)..................................................................................18

*United States v. Renda Marine, Inc.,*
    667 F.3d 651 (5th Cir. 2012) .................................................................................9

*United States v. W. T. Grant Co.,*
    345 U.S. 629 (1953)..............................................................................................15

*Waste Connections, Inc. v. Chevedden,*
    554 F. App'x 334 (5th Cir. 2014) ..........................................................................9

*Wien Air Alaska, Inc. v. Brandt*,
　195 F.3d 208 (5th Cir. 1999) ................................................................20

STATUTES

28 U.S.C. § 2202 .................................................................................18, 20

Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa............................... passim

Tex. Civ. Prac. & Rem. Code § 17.042 .......................................................20

OTHER AUTHORITIES

17 C.F.R. § 240.14a-8 .......................................................................... passim

Wright & Miller § 2771 Judgment, 10B Fed. Prac. & Proc. Civ. § 2771 (4th ed.) .......................18

Commissioner Mark T. Uyeda, Remarks at the Society for Corporate Governance
　2023 National Conference (June 21, 2023), http://tinyurl.com/59ajtp77 .................................5

Federal Rule of Civil Procedure 54(c) .........................................................18

**INTRODUCTION**

Since 2014, Exxon Mobil Corporation ("ExxonMobil") has received 141 shareholder proposals, an average of approximately fourteen proposals per year. Compare this to the fewer than three proposals received annually by the average S&P 500 company that receives any proposals at all. Roughly half of the proposals received by ExxonMobil since 2014 were submitted by activist organizations. During this time, only three of those activist proposals were approved by ExxonMobil shareholders. Despite its low success rate, professional shareholder activism is widespread at public companies in the United States as it offers other benefits such as name recognition, fundraising opportunities, and a free platform to raise the profile of a proponent's issue or agenda.

Taking full advantage of these benefits, Defendants Arjuna Capital and Follow This hijack the shareholder proposal process to advance their social causes with serial filings each year at the expense of investors who focus on generating returns. In the last eleven years, they have submitted, alone or together, fourteen shareholder proposals to ExxonMobil. None of those proposals received close to majority support; the most recent was rejected by almost 90 percent of voting shareholders. ExxonMobil filed suit to stop Defendants' cycle of shareholder activism that burdens it each proxy season.

In response, Defendants withdrew the proposal that triggered this lawsuit (the "2024 Proposal") and now claim that there is no longer a live case or controversy. But as the Supreme Court, the Fifth Circuit, and this Court have repeatedly held, a defendant cannot so easily strip away a court's jurisdiction to resolve live disputes. If it were otherwise, "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). To show that the cycle has ended, a defendant bears the "formidable" burden

of proving under the voluntary cessation doctrine that it is "absolutely clear" that the challenged conduct could not reasonably be expected to recur. *Id.*

Defendants have not carried that burden. They promise not to submit the same proposal again but offer nothing more. Defendants could, therefore, tweak the 2024 Proposal and resubmit a substantially similar one next year, on their own or in coordination with other like-minded activists. They could also resubmit their same failed proposals from 2022 and 2023. Hoping that Defendants change their plans is a strategy ExxonMobil cannot accept and the Court should not rely on. A judgment from this Court can stop this cycle and provide the relief that ExxonMobil seeks—by declaring the 2024 Proposal is excludable under Rule 14a-8(i)(7) and (i)(12) and preventing Defendants from submitting a similar version of the 2024 Proposal in the future. As a result, this case is not moot.

Defendants' personal jurisdiction argument is equally meritless. Under the nationwide service-of-process provision of Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa, all that is required is that Defendants have sufficient contacts with the United States such that exercising personal jurisdiction would not offend due process. Defendants do not contest that they have such contacts; instead, they argue that this Court should reject the Fifth Circuit's binding interpretation of Section 27. That is wrong. In any event, ExxonMobil has alleged sufficient suit-related contacts with Texas to satisfy the Texas long-arm statute, and Defendants do not challenge this independent basis for personal jurisdiction.

Finally, if the Court has any doubt that this case continues to present a live controversy or that Defendants are subject to personal jurisdiction in Texas, the Court should authorize ExxonMobil to conduct jurisdictional discovery into any disputed facts.

## BACKGROUND

### I.    ExxonMobil

ExxonMobil is one of the world's largest and most successful energy companies. ECF 1 ("Compl.") ¶ 43. Its principal business involves the exploration for, and production of, crude oil and natural gas, *id*. ¶ 29, which provide a majority of the world's energy and for which demand is increasing. In addition, since 2000, ExxonMobil has invested billions of dollars to develop and deploy lower-emission energy solutions and is pursuing more than $20 billion in these efforts from 2022 through 2027. *Id.* ¶ 44. It is also actively engaged in reducing its emissions. *Id.* ¶¶ 44–45.

ExxonMobil is organized under the laws of New Jersey, with its principal place of business in Spring, Texas. *Id.* ¶ 28. It relocated its headquarters from Irving, Texas to Spring, Texas in July 2023. *Id*. ExxonMobil holds an annual meeting of shareholders during which the company reports on its business and shareholders vote on certain matters. *Id.* ¶¶ 32, 47. In connection with this meeting, ExxonMobil prepares a proxy statement that informs shareholders of the agenda, procedures, and rules of conduct for the annual meeting. *Id.* ¶ 33. The proxy statement also describes how the company's Board operates, gives information about director candidates, and provides the company's views on other items of business, including proposals submitted by shareholders. *Id.*

### II.    The SEC's Proxy Rules

Under the securities laws, a shareholder who does not attend a company's annual meeting can still vote on items presented for shareholder vote by authorizing someone else to do so via a proxy. To solicit proxy votes, a U.S.-domiciled public company must distribute a proxy statement to its shareholders before the annual shareholder meeting. A proxy statement provides shareholders information they need to cast an informed vote at an annual shareholder meeting. *See, e.g.*, *Apache Corp. v. Chevedden*, 696 F. Supp. 2d 723, 727-30 (S.D. Tex. 2010).

The SEC issued Rule 14a-8 to "address[] when a company must include a shareholder's proposal in its proxy statement." 17 C.F.R. § 240.14a-8. Rule 14a-8 provides companies an important check on improper shareholder proposals. In certain circumstances, a company may exclude a shareholder proposal from its proxy statement. *Id*. Two exclusions are relevant in this case.

Under Rule 14a-8(i)(7), known as the Ordinary Business Exclusion, a company may exclude a shareholder proposal from its proxy statement if "the proposal deals with a matter relating to the company's ordinary business operations." 17 C.F.R. § 240.14a-8(i)(7). And under Rule 14a-8(i)(12), known as the Resubmission Exclusion, a company may exclude a shareholder proposal if it: (1) "addresses substantially the same subject matter as a proposal, or proposals, previously included in the company's proxy materials within the preceding five calendar years . . ." and (2) does not satisfy the resubmission criteria set forth in the rule. 17 C.F.R. § 240.14a-8(i)(12).

## III.    Follow This and Arjuna Abuse the Proxy Rules to Promote Their Social Causes.

Some shareholders submit proposals that are designed to positively interact with the company and promote shareholder value. However, certain activist groups have seized upon the shareholder proposal process as a way to advance their own social causes. By their own admission, Arjuna and Follow This are in this latter group. They acknowledge that they do not own ExxonMobil stock for the purpose of participating in the company's business and sharing in its profits and have no interest in positively driving investor returns.

Follow This "explicitly does not aim to achieve returns on behalf of its members through shares acquired . . . in oil and gas companies." Compl. ¶ 3. Rather, Follow This "buy[s] shares in order to work on our mission …, not to make a financial profit." *Id.* To that end, Follow This publicly pursues a "Trojan Horse" strategy. It (or its donors) become nominal shareholders of an

energy company solely to attack the company from within by campaigning for change that is calculated to interfere with the company's existing business. *Id.* ¶ 1. These "Trojan Horse" shareholder proposals are designed to advance Follow This's activist agenda, rather than make a financial profit. *Id.* ¶ 3.

Arjuna is likewise devoted not to maximizing value but to shareholder activism. In particular, Arjuna attempts to dissuade energy companies like ExxonMobil from pursuing "growth." *Id.* ¶ 49. It publicly advocates that "Big Oil needs to shrink," *id.* ¶ 49 n.14, at a time when global demand for oil and gas is increasing, a tactic that would cede market share to private and state-owned enterprises that are not bound by the proxy rules or SEC disclosure requirements. Given these statements, it is unsurprising that a court found Arjuna's chief investment officer to be "manifestly biased" against ExxonMobil. *Id.* ¶ 52.

Arjuna has a long history of collaborating with other activist organizations, such as As You Sow and Proxy Impact. Compl. ¶ 64. In addition, it is a member of the Interfaith Center on Corporate Responsibility ("ICCR"),[1] whose core mission is to coordinate collective action by investors to submit shareholder proposals. By ICCR's own calculations, its members submit close to 500 shareholder proposals each year.[2] That figure is more than half of the 961 total shareholder proposals that the SEC estimates were submitted to public companies last year.[3]

Public companies saw an eighteen percent increase in the number of proposals submitted in 2023 compared to 2021. Compl. ¶ 60. And the number of proposals that were voted on at public company annual shareholder meetings rose by forty percent during that same period. *Id.* These

---

[1] https://www.iccr.org/member-directory/

[2] https://www.iccr.org/shareholder-resolutions/

[3] Commissioner Mark T. Uyeda, Remarks at the Society for Corporate Governance 2023 National Conference (June 21, 2023), http://tinyurl.com/59ajtp77.

sharp increases impose extra out-of-pocket expenses and opportunity costs on public companies and have come despite no change in the language of the SEC's proxy rules. *Id.* ¶ 58. This troubling trend reinforces how important it is for public companies to be able to rely on the plain language of the SEC rules to exclude shareholder proposals submitted by activist organizations that are not designed to promote shareholder value.

## IV. The Defendants' 2024 Proposal Follows a Long Line of Proposals Designed to Advance Defendants' Social Causes Rather than Enhance Shareholder Returns.

To advance their aims, Follow This and Arjuna have submitted, alone or together, fourteen shareholder proposals in the past eleven years for publication in ExxonMobil's proxy materials. Compl. ¶ 54; *see also* ExxonMobil's Appendix ("App.") A.001-005. All were rejected by shareholders at the company's annual meeting, excluded by ExxonMobil, or withdrawn due to a procedural deficiency. *Id.* Arjuna has long collaborated with other activist organizations to submit similar shareholder proposals. Compl. ¶ 63. Its submission of the 2024 Proposal with Follow This continues this tradition.

Their latest salvo in this long-running campaign was the 2024 Proposal, which Arjuna and Follow This submitted to ExxonMobil at its headquarters in Spring, Texas, on December 14, 2023. Compl. ¶ 66. The 2024 Proposal requests that ExxonMobil "go beyond current plans, further accelerating the pace of emission reductions in the medium-term for its greenhouse gas (GHG) emissions … and to summarize new plans, targets, and timetables." *Id.* Follow This submitted the identical proposal as a co-filer and designated Arjuna as the lead filer. *Id.* ¶ 67.

ExxonMobil responded to Arjuna and Follow This to notify them of procedural and eligibility deficiencies[4] related to the 2024 Proposal. *Id.* ¶ 68. In that notice, ExxonMobil called

---

[4] As Defendants acknowledge, ECF 22-1, 4 n.3, SEC rules require ExxonMobil to identify only procedural deficiencies in the initial notice. *See* 17 CFR § 240.14a-8(f).

attention to Arjuna's "concerted work" with other activist organizations, including As You Sow and Proxy Impact. ECF 22-2 at 005. For example, Arjuna collaborated with those organizations in 2021 to campaign against ExxonMobil's director nominees through their membership in Coalition United for a Responsible Exxon, and they have jointly published reports seeking to influence shareholders on social and political issues that are not aligned with the interests of ExxonMobil's investors. Compl. ¶ 64.

The 2024 Proposal is substantially the same as proposals Follow This and Arjuna submitted to ExxonMobil at its headquarters, which were then in Irving, Texas, for consideration at the 2022 and 2023 annual shareholder meetings (the "2022 Proposal" and "2023 Proposal," respectively). Compl. ¶¶ 101, 103. The 2022 Proposal called for ExxonMobil "to set and publish medium- and long-term targets to reduce the greenhouse gas (GHG) of the Company's operations and energy products … consistent with the goal of the Paris Climate Agreement …." Compl. ¶ 101. The 2023 Proposal called for ExxonMobil to "set a medium-term reduction target covering the greenhouse gas (GHG) emissions of the use of its energy products … consistent with the goal of the Paris Climate Agreement …." *Id*. ¶ 103. Over 72 percent of ExxonMobil's voting shareholders rejected the 2022 Proposal, and over 89 percent rejected the 2023 Proposal. *Id*. ¶¶ 102, 104.

## V.   Procedural History

On January 21, 2024, ExxonMobil filed this lawsuit and notified the SEC of its intent to omit the 2024 Proposal from its proxy statement. Compl. ¶ 69. It also requested expedited relief from this Court in advance of its annual shareholder meeting scheduled for May 29, 2024. ECF 11. The complaint alleges that the 2024 Proposal can be excluded under Rule 14a-8 for two reasons. First, the proposal fits within the Ordinary Business Exclusion because it strikes at the heart of the company's ordinary business operations—urging ExxonMobil to limit the amount of oil and gas its sells. Compl. ¶ 16. Second, the proposal fits within the Resubmission Exclusion

because it addresses substantially the same subject matter as Defendants' previous proposals that failed at the last two annual meetings. *Id*. ¶ 17. The complaint seeks a declaratory judgment that the 2024 Proposal is excludable under Rule 14a-8 for these two reasons and "such other and further relief as the Court may deem just and proper." *Id*. ¶ 26.

Eight days after the complaint was filed, each Defendant notified ExxonMobil of their withdrawal but did not, and still have not, made it clear that the challenged conduct will cease. While Defendants waived the right to sue ExxonMobil for not including the proposal in the proxy statement and promised not to refile "the proposal" with ExxonMobil in the future, ECF 22-30, 31, their withdrawal provides no assurances that Defendants would not by themselves, or working with others in their activist coalition, continue to submit slightly different but substantively identical proposals going forward. For example, the notices make clear that "the proposal" is ***only*** the proposal submitted for ExxonMobil's 2024 annual meeting. And so Defendants preserved their ability to resume their Trojan Horse campaign against ExxonMobil next year using a substantially similar proposal that seeks to micromanage ExxonMobil's ordinary business by prescribing the volume and types of products that ExxonMobil produces and sells. Tellingly, Defendants' so-called promise would not even require them to refrain from resubmitting the 2022 or 2023 Proposals in the future or commit them to not coordinate with like-minded organizations to submit similar proposals to ExxonMobil. Finally, Defendants did not acknowledge that the 2024 Proposal was excludable under the Ordinary Business Exclusion or the Resubmission Exclusion.

After receiving the notices, ExxonMobil withdrew its request for expedited relief, ECF 16, but continued the case because Defendants have provided no assurances that they will not submit (or work with others in their network to submit) similar proposals that seek to dictate the volume and types of products that ExxonMobil produces and sells, ECF 20. Defendants have moved to

dismiss the complaint as moot and for lack of personal jurisdiction. ECF 22 and 22-1 ("Mot."); ECF 25. ExxonMobil opposes.

## LEGAL STANDARD

A defendant contending that a case has become moot as a result of its own voluntary behavior bears the "formidable" burden of demonstrating that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *K.P. v. LeBlanc*, 729 F.3d 427, 438 (5th Cir. 2013). When a defendant "mounts a facial attack on jurisdiction based only on the allegations in the complaint, the court simply considers the sufficiency of the allegations in the complaint because they are presumed to be true." *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016) (cleaned up). The Court "may consider … the complaint supplemented by undisputed facts evidenced in the record," *United States v. Renda Marine, Inc.*, 667 F.3d 651, 654 (5th Cir. 2012) (cleaned up), including the undisputed facts contained in ExxonMobil's appendix to this brief. To the extent the Court identifies a disputed fact regarding its subject-matter or personal jurisdiction, the court has wide discretion to permit targeted jurisdictional discovery. *See In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012) (granting discovery regarding subject-matter jurisdiction); *Skidmore v. Syntex Labs., Inc.*, 529 F.2d 1244, 1249–50 (5th Cir. 1976) (granting discovery regarding personal jurisdiction).

## ARGUMENT

### I.     The Court Has Subject-Matter Jurisdiction.

This Court has subject-matter jurisdiction to hear this live dispute. Defendants do not contest ExxonMobil's standing at the time the complaint was filed. *See Waste Connections, Inc. v. Chevedden*, 554 F. App'x 334, 335-36 (5th Cir. 2014) (issuer had standing to sue defendant who submitted shareholder proposal); *KBR v. Chevedden*, 478 F. App'x 213, 215 (5th Cir. 2012) (same). Instead, they argue that their voluntary withdrawal of the 2024 Proposal moots the case

and thus deprives the Court of subject-matter jurisdiction. But "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

A defendant arguing that a once-live case has become moot as a result of *its own voluntary conduct* must carry a heavy burden to show that it is "absolutely clear" that the challenged conduct will not recur. *K.P.*, 729 F.3d at 438. Defendants do not and cannot meet their burden, given their long history of submitting shareholder proposals to ExxonMobil, unyielding commitment to pursuing their personal agenda through social activism, and narrow promise to not resubmit the 2024 Proposal. Also, the Court can award effectual relief to ExxonMobil by declaring that the withdrawn 2024 Proposal is excludable under the Ordinary Business Exclusion and Resubmission Exclusion and preventing Defendants from submitting future similar proposals on their own or in coordination with other activist shareholders.

### A.   Defendants Have Not Made "Absolutely Clear" That Their Conduct Will Not Recur.

A "defendant cannot automatically moot a case simply by ending its challenged conduct once sued." *K.P.*, 729 F.3d at 438. "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already*, 568 U.S. at 91. Allowing such gamesmanship would "leave the defendant . . . free to return to his old ways." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Accordingly, Defendants have a heavy burden of demonstrating that it is "absolutely clear" that the conduct challenged in ExxonMobil's complaint "could not reasonably be expected to recur" in order to moot this case. *K.P.*, 729 F.3d at 438. Defendants fail to carry that burden for several reasons.

1.    **Defendants Have Failed to Show They Will Not Submit a Slightly Modified But Substantively Identical Proposal to ExxonMobil Next Year.**

Notwithstanding their withdrawal of the 2024 Proposal, Defendants have "not shown an absolute certainty" that they will not repeat their conduct in the future or collaborate with others to do the same. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329 (5th Cir. 2020). The Supreme Court has said that "[p]ast wrongs [are] evidence bearing on" whether a defendant's conduct will recur in the future. *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983). Here, Defendants are serial filers engaged in a "systemic" practice of submitting similar proposals on a recurring basis every year. *Crawford v. Hinds Cnty. Bd. of Supervisors*, 1 F.4th 371, 376 (5th Cir. 2021) (finding a "systemic" exclusion giving rise to future injury standing in light of ADA-non-compliant facilities resulting in wheelchair-using individual being excused from jury service twice). Their submission of proposals in 2022 and 2023 that are substantially the same as the 2024 Proposal shows they have every intention of continuing to repeat the same conduct every year. Compl. ¶¶ 99-109; Exxon Mobil Corporation's App. A.001-005; *Ciudadanos Unidos De San Juan v. Hidalgo Cnty. Grand Jury Comm'rs*, 622 F.2d 807, 820-21 (5th Cir. 1980) (ten year history of conduct created a strong inference that it would continue). This is their pattern, indeed it is their very business model, and they will continue submitting proposals unless and until they are told they cannot.

The so-called promise by Defendants to not resubmit the *identical* proposal next year does nothing to carry their formidable burden of showing with absolute certainty that their conduct will not recur. They have provided only a partial and easily circumvented assurance, namely to not "resubmit *the* [2024] Proposal for consideration in any future Exxon proxy or to raise it at any Exxon annual meeting." Mot. 6–7 (emphasis added). That narrow promise does not afford ExxonMobil complete relief because it does not include a commitment that they will not submit a near identical proposal to ExxonMobil next year. *See Tucker v. Gaddis*, 40 F.4th 289, 292 (5th Cir.

11

2022) (holding challenge to a government policy change was not moot where the government had not given "any assurance that it will permanently cease engaging in the very conduct [plaintiff] challenges" but instead "reserve[d] the question in light of potential" future developments.).

Comparing Defendants' narrow promise against the broad promises in two leading cases Defendants rely on shows why Defendants' withdrawal does not moot this case. Mot. 12–13. For example, in *Already, LLC v. Nike, Inc.*, Nike sought to dismiss both its complaint for trademark infringement and the defendant's counterclaim challenging the validity of Nike's trademark. 568 U.S. at 102. Nike argued the case was moot because it had issued a "Covenant Not to Sue," promising "not to raise . . . any trademark or competition claim based on any . . . existing . . . designs, . . . or any *future . . . designs* that constituted a '*colorable imitation*' of . . . current products." *Id.* (emphasis added). The defendant argued the case was not moot because it planned to develop similar designs in the future and had no certainty that it could market those designs "until Nike's trademark was invalidated." *Id.*

The Supreme Court held that the case was moot because the "breadth of the covenant" was sufficient to "prohibit . . . any claim or any demand" that could arise from those future marketing efforts, emphasizing it was "hard to imagine a scenario that would potentially infringe [Nike's trademark] and yet not fall under the Covenant." *Id*. at 93-94. Similarly, in *Acheson Hotels, LLC v. Laufer*, the Supreme Court held that the case was moot where the defendant "disavowed the intention to file *any* more ADA tester suits" and "represented to th[e] Court that she [would] not file *any* others." 601 U.S. 1, 5 (2023) (emphases added). As in *Already*, the promise extended far beyond mere withdrawal of the specific action that caused the dispute in the first place to encompass any future similar actions.

Exactly the opposite is true here. Defendants have not disavowed submitting a substantially identical proposal next year. Instead, Defendants promise only one scenario under which this dispute will *not* recur—a repeat submission of "*the* [2024] Proposal." Mot. 12 (emphasis added). Their stingy promise does not even encompass the exact language of their 2022 and 2023 proposals or any other similar proposal. Defendants have made nothing close to the kind of unequivocal promise required for them to make "absolutely clear" that they will not impose the same harm on ExxonMobil again.

That makes this case more like Fifth Circuit precedents where voluntary cessation did not moot the case than like *Nike* or *Acheson*. For example, in *Netflix, Inc. v. Babin*, the dismissal of an indictment did not moot Netflix's action seeking to enjoin that indictment because the prosecutor's newly-announced policy was "expressly contingent on, among other possibilities, judicial resolution of [the charging statute's] constitutionality." 88 F.4th 1080, 1090 (5th Cir. 2023). Similarly, in *Tucker v. Gaddis*, the State's announcement of a new policy governing prisoner religious gatherings did not moot a challenge to the old policy where the State would "not guarantee congregation in the future, but instead would reserve the question in light of potential 'time, space, and security concerns.'" 40 F.4th at 293; *accord Donovan v. Cunningham*, 716 F.2d 1455, 1461 (5th Cir. 1983) (voluntary cessation did not moot case because "bare assurances" that defendants "do not intend to serve as ERISA fiduciaries in the future" were "clearly insufficient to meet their burden of persuasion.").

Defendants argue that it is "wholly unfounded" to infer that they will submit a slightly modified proposal next year. Mot. 12. But that ignores that it is *Defendants* who bear the burden of proving it is "absolutely clear" that they will not resume their serial past conduct. *Netflix*, 88 F.4th at 1090. It also ignores their history of resubmitting substantially the same proposal for three

13

straight years and that their very reason for existence is to submit these types of shareholder proposals each year. Compl. ¶¶ 4-7. Defendants' concern about "hypothetical future proposals" is a red herring because this case arises in the context of a concrete dispute—the 2024 Proposal—and in light of Defendants' years-long history of submitting similar proposals. Mot. 15. No speculation about "hypothetical future proposals" is required to adjudicate this case.

In short, Defendants have failed to show with "an absolute certainty" that their offending conduct "will not be reinstituted" with slightly modified but substantively identical proposals. *Fenves*, 979 F.3d at 329 (holding that public university's change of speech-regulation policy did not foreclose a return to the offending policy and thus did not moot the plaintiff's claim). Absent a binding judgment from this Court, Defendants are free to resume their conduct next year—demanding changes to ExxonMobil's ordinary business operations at its 2025 annual shareholder meeting via a proposal that is substantially similar, but not word-for-word identical, to the 2024 Proposal. *LeBlanc*, 729 F.3d at 439 ("Because it is not *clear* that the [defendant's challenged action] *could not* reasonably be expected to recur with respect to [plaintiff], this case is not moot.") (emphasis added)).

Defendants thus fail to satisfy their burden to prove mootness. *See Campinha-Bacote v. Turner*, No. 3:13-CV-1195-G, 2014 WL 923652, at *3 (N.D. Tex. Mar. 10, 2014) (Because defendant "has failed to demonstrate that the alleged infringing activity will not recur, the court is not convinced that [defendant] has met [defendant's] burden as movant regarding future conduct.").[5]

---

[5] Defendants' reliance on mootness cases involving expired governmental policies is misplaced. Mot. 10. Unlike private parties, "governmental entities bear a 'lighter burden' ... in proving that the challenged conduct will not recur ... because [courts] presume that state actors, as public representatives, act in good faith." *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023). Defendants are not government actors entitled to a presumption of good faith. And, as discussed below in

### 2.    Defendants Still Defend the Legality of Their Proposal.

The fact that Defendants continue to "defend[] the legality of" the 2024 Proposal also confirms this case is not moot. *Fenves*, 979 F.3d at 329; *see also Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (finding that whether the government defendant "vigorously defends the constitutionality of its . . . program" is important to the mootness inquiry). After ExxonMobil filed suit, Follow This claimed the 2024 Proposal is "[i]n compliance with their shareholder rights and the rules of the [SEC]."[6] And Arjuna offers nothing to suggest it disagrees with its co-filer. Defendants thus "continue to vigorously contest" the legality of their proposal under Rule 14a-8. *Chafin v. Chafin*, 568 U.S. 165, 173 (2013). While Defendants claim to have "no interest" in litigation with ExxonMobil, Mot. 12-13, their continued insistence on "the propriety of their conduct" further demonstrates that this case is not moot, *Netflix*, 88 F.4th at 1090 (considering whether "the defendant continues to defend the challenged behavior"), and that this litigation remains necessary. Accordingly, the Court should settle the legality of the 2024 Proposal because there remains "a dispute over the legality of the challenged practices." *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953).

### 3.    Defendants Timed the Withdrawal to Thwart Judicial Review.

Finally, when a defendant ceases an action "after the complaint was filed," that "raises suspicions that its cessation is not genuine," and thus "increases the [defendant's] burden to prove that the change" is not a pretext to avoid litigation. *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 769 (6th Cir. 2019); *see also Fenves*, 979 F.3d at 329 (same) (relying on *Schlissel*). Here, the

---

Section I.A.3, the suspicious timing of Defendants' withdrawal suggests a tactical retreat, not a commitment to stop submitting shareholder proposals similar to the 2024 Proposal.

[6] https://www.follow-this.org/exxon-files-lawsuit-against-climate-resolution-by-arjuna-capital-and-follow-this/.

timing of Defendants' withdrawal—eight days after ExxonMobil filed the complaint—smacks of the sort of "gamesmanship" that cannot moot a case. *Texas v. Biden*, 20 F.4th 928, 962–64 (5th Cir. 2021), *rev'd on other grounds*, 142 S. Ct. 2528 (2022); *see also Netflix*, 88 F.4th at 1089–90 (considering whether "the change in conduct is suspiciously timed"); *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 284 (5th Cir. 2012) (amending challenged law "the night before oral argument" did not moot case).

The most plausible inference from Defendants' withdrawal is that it is designed to defeat judicial review of their serial conduct. Defendants chose to stand by the 2024 Proposal until *after* ExxonMobil filed suit. Tellingly, they have offered no explanation for their withdrawal to rebut the inference of "litigation posturing" to moot this case. *Pool v. City of Houston*, 978 F.3d 307, 314 (5th Cir. 2020). Their suspiciously timed withdrawal of the 2024 Proposal thus further undermines their mootness argument.

### B.  The Court Can Still Award Effectual Relief.

The Court should also reject Defendants' mootness argument because the Court can still award effectual relief. "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party. As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307–8 (2012) (cleaned up). Being able "to imagine an alternative form of relief is all that's required to keep a case alive," *Dierlam v. Trump*, 977 F.3d 471, 476–77 (5th Cir. 2020) (cleaned up), including remedies that "were not initially requested in the pleadings," *Isidor Paiewonsky Asoscs., Inc. v. Sharp Props., Inc.*, 998 F.2d 145, 151 (3d Cir. 1993); *Rezaq v. Nalley*, 677 F.3d 1001, 1010 (10th Cir. 2012) (same); *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244-45 (9th Cir. 1998) (same).

Despite the withdrawal of the 2024 Proposal, it would certainly not be "impossible" for the

16

Court to award "effectual relief" to ExxonMobil. *Knox*, 567 U.S. at 307–8. To prevent the same dispute from recurring next year, the Court could issue a judgment that (a) the 2024 Proposal is excludable under the Ordinary Business Exclusion and Resubmission Exclusion, (b) ExxonMobil need not include future similar proposals from Defendants on its annual proxy statements, and (c) Defendants may not coordinate with other activist shareholders to facilitate or encourage them to submit similar proposals in the future. This relief would end Defendants' perennial campaign of promoting their social agenda through shareholder proposals to ExxonMobil that seek to micromanage its business and coordinating with others to do the same. ExxonMobil's "concrete interest" in preventing Defendants from resubmitting, on their own or in coordination with other groups, a slightly modified but substantively identical proposal next year "is enough to save this case from mootness." *Chafin*, 568 U.S. at 174.

Nor would a declaratory judgment that the 2024 Proposal is excludable under Rule 14a-8 be an advisory opinion. Mot. 15. Such a judgment would be a "predicate to further" relief described in (b) and (c) above, which would prevent Defendants from engaging in similar conduct next year individually or in coordination with others. *Christopher Vill., Ltd. P'ship v. Retsinas*, 190 F.3d 310, 315 (5th Cir. 1999). The Court need not decide the appropriateness of any such relief at this stage, as Defendants contend, Mot. 17, because it is for the Court "at later stages of the litigation to decide whether [ExxonMobil] is in fact entitled to the relief [it] seeks," *Dierlam*, 977 F.3d at 477 ("a court must not 'confuse[ ] mootness with the merits'"). Nor would the Court's judgment need to run against "unknown shareholders" to redress ExxonMobil's injury. Motion 14. It would instead prevent *these* Defendants from coordinating with other activist shareholders to resubmit the same, or substantially the same, proposal next year.[7]

---

[7] Contrary to Defendants' assertions, Mot. 16-17, this case is not about the SEC. It is, rather, about Defendants' serial submission of shareholder proposals that are designed to advance their social causes to

It makes no difference that ExxonMobil did not specifically include these other forms of relief in the complaint. ExxonMobil asked the Court for a declaratory judgment that the 2024 Proposal is excludable under Rule 14a-8 and for "such other and further relief as the Court may deem just and proper." Compl. ¶ 26, Prayer for Relief. In granting relief under the Declaratory Judgment Act, this Court may award "[f]urther necessary or proper relief based on a declaratory judgment," 28 U.S.C. § 2202, "even if such relief was not requested in the complaint," *Union de Empleados de Muelles de Puerto Rico, Inc. v. Int'l Longshoremen's Ass'n*, 884 F.3d 48, 59 (1st Cir. 2018); *see also* Wright & Miller § 2771 Judgment, 10B Fed. Prac. & Proc. Civ. § 2771 (4th ed.) (explaining that a court is authorized to "grant relief that was not demanded or relief that was not even proved in the original declaratory-judgment action"). And Federal Rule of Civil Procedure 54(c) further authorizes the Court to grant any appropriate relief in response to the complaint's general prayer, even if such relief was not specifically requested. *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 378 (5th Cir. 2022).

Finally, ExxonMobil did not "tacitly concede[]" that this case is moot by withdrawing its request for expedited relief. Mot. 10. Once Defendants withdrew the 2024 Proposal, expedited consideration ahead of the imminent deadline to print the proxy statement was simply no longer necessary; burdening the Court with expedited review would have been pointless. But that has nothing to do with whether a case or controversy remains in view of the likelihood that Defendants will continue to repeat their conduct in the future. Defendants' failure to establish with "absolute certainty" that they will not is more than sufficient to keep this dispute alive.

---

the detriment of ExxonMobil's investors. Moreover, the SEC itself has explained that its staff guidance is informal and nonbinding and that only a court can provide the type of relief that ExxonMobil seeks here. Compl. ¶¶ 41-42.

## II.     The Court Has Personal Jurisdiction Over Defendants.

It is black-letter law that "when a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States."[8] *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) (collecting cases). Defendants clearly fall within that broad standard. Arjuna is based in the United States, and Follow This has had multiple contacts with the United States in connection with the claims asserted in this case. Compl. ¶¶ 24, 30, 101, 103. Defendants do not and cannot refute those allegations or contend that exercising jurisdiction over them offends due process. The Court thus has personal jurisdiction over them. *See Busch*, 11 F.3d at 1258.

The Court should decline Defendants' invitation to carve out an exception to the nationwide-contacts-test under Section 27 of the Exchange Act, 15 U.S.C. § 78aa. *See* Mot. 6, 18–19. The complaint seeks a declaration that the 2024 Proposal is excludable under Rule 14a-8. Thus, ExxonMobil seeks to enforce liabilities and duties owed under the Exchange Act, which is all that is required for Section 27 to apply. *See Busch*, 11 F.3d at 1258. Further, other than a single case from a California court—*Pac. Life Ins. Co. v. Spurgeon*, 319 F. Supp. 2d 1108 (C.D. Cal. 2004)––Defendants provide no support for their argument. *See* Mot. 18–19. That case has never been followed for the principle for which Defendants cite it here and conflicts with binding precedent in this Circuit. *See Busch*, 11 F.3d at 1258.

The Court should instead follow *KBR Inc. v. Chevedden*, a closely analogous case that was affirmed by the Fifth Circuit. 776 F. Supp. 2d 415 (S.D. Tex. 2011), *summary judgment granted*

---

[8] This inquiry is thus different than the traditional minimum-contacts inquiry, which focuses on the defendant's suit-related contacts with the forum, and which ExxonMobil addresses below.

*by* No. CIV.A. H-11-0196, 2011 WL 1463611, at *4 (S.D. Tex. Apr. 4, 2011), *clarified on denial of reconsideration sub nom. KBR v. Chevedden*, No. CIV.A. H-11-0196, 2011 WL 6033039 (S.D. Tex. Dec. 5, 2011), *affirmed sub nom. KBR v. Chevedden*, 478 Fed. Appx. 213, 214 (5th Cir. 2012) *and motion to vacate denied*, No. CIV.A. H-11-0196, 2013 WL 3713420 (S.D. Tex. July 12, 2013). In *KBR*, an activist shareholder submitted a proposal to be included in KBR's proxy statement for its shareholder meeting. *Id*. at 417. The issuer filed a complaint under the Declaratory Judgment Act, seeking a declaration that it could lawfully exclude the proposal from its proxy statement. *Id*. 417–18. It relied on the Exchange Act's nationwide service-of-process provision as the basis for the Texas district court to exercise personal jurisdiction over the proponent, a California resident. *Id*. 418, 422. The court concluded based on *Busch* and other Fifth Circuit cases that, "[b]ecause the Exchange Act authorizes nationwide service, the only issue is whether [the proponent] has sufficient minimum contacts with the United States." *Id*. at 422. Holding that it had personal jurisdiction, *id*. at 423, the court reached the merits, *id*. at 430-432, and granted summary judgment for the issuer, 2011 WL 1463611, at *4, which was affirmed on appeal, 478 Fed. Appx. at 214.

As an alternative to personal jurisdiction under Section 27, Defendants have sufficient contacts with Texas to be subject to specific personal jurisdiction under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042. *See Polythane Sys., Inc. v. Marina Ventures Int'l Ltd.*, 993 F.2d 1201, 1205 (5th Cir. 1993) (applying Texas long-arm statute and due process considerations). Both have purposefully transacted business in Texas by delivering the three shareholder proposals at issue in this case to ExxonMobil in Texas for consideration at ExxonMobil's annual shareholder meetings. Compl. ¶¶ 26, 54, 101, 103. It is undisputed that ExxonMobil's cause of action arises from those contacts, and Defendants do not and cannot contend that it would offend due process for this Court to exercise specific personal jurisdiction over them. *See Wien Air Alaska, Inc. v.*

20

*Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) ("Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair.") Thus, their motion to dismiss for lack of personal jurisdiction should be denied.

## III.   In the Alternative, the Court Should Authorize Jurisdictional Discovery.

As discussed above, Defendants fail to carry their burden of showing that the case is moot, and this Court may exercise personal jurisdiction over them. But if the Court has any doubt about either point, it should authorize ExxonMobil to conduct limited jurisdictional discovery. Trial courts have discretion to grant discovery of facts needed to withstand a motion to dismiss for lack of subject-matter jurisdiction. *See MPF Holdings*, 701 F.3d at 457. And courts often grant discovery regarding a party's forum contacts when there are factual disputes related to personal jurisdiction. *See Skidmore*, 529 F.2d at 1249–50 (granting jurisdictional discovery); *Pavelka v. Pelican Inv. Holdings Grp., LLC*, No. 3:22-CV-0074-B, 2022 WL 3159275, at *7 (N.D. Tex. Aug. 8, 2022) (same).

Here, ExxonMobil is entitled to jurisdictional discovery about the Defendants' activist campaigns, including the likelihood that Defendants will submit shareholder proposals similar to the 2024 Proposal in the future. ExxonMobil has alleged that Defendants routinely submit shareholder proposals to it. Compl. ¶ 54. And they have submitted to ExxonMobil virtually identical proposals for three straight years. *Id.* ¶¶ 101-104. Further, Defendants coordinate with other like-minded activist organizations to submit and support each other's shareholder proposals. *Id.* ¶¶ 63-64. Arjuna is a member of one such organization, the ICCR, which coordinates the efforts of over 300 members[9] to submit dozens of shareholder proposals to public companies each year.

---

[9] https://www.iccr.org/

Demonstrating its collective action with respect to shareholder proposals, ICCR even submitted a letter to ExxonMobil on behalf of its members asking it to dismiss this lawsuit.[10]

Given these allegations, Defendants are likely to submit in the future, on their own or in collaboration with another, a slightly modified but substantively identical proposal to the 2024 Proposal. Defendants dismiss this possibility as "wholly unfounded," contending that their promise not to resubmit the 2024 Proposal is sufficient. If the Court has any doubt about its subject-matter jurisdiction, ExxonMobil must be given the opportunity to discover evidence regarding these and other contested facts. Such discovery would include, for instance: Defendants' multi-year planning of shareholder activist campaigns; internal planning documents, scheduling, and budgeting regarding future proposals to ExxonMobil; communications with members or donors about shareholder proposals to ExxonMobil; and communications with ICCR members and other like-minded organizations with which they coordinate to submit shareholder proposals to ExxonMobil.

The court granted jurisdictional discovery on a similar set of facts in *Ashford Inc. v. Unite Here*. No. 3:15-cv-0262-M, 2015 WL 11121019, at *1 (N.D. Tex. May 12, 2015). In denying a motion to stay discovery after a shareholder proposal was withdrawn, the court ruled that a stay would prejudice the company because it would be prohibited from seeking evidence about the proponent's motivation for submitting the proposal and "the likelihood that similar proposals will be submitted in the future." *Id.* at *2. The same is true here.

Finally, there is little doubt that the Court can exercise personal jurisdiction over Defendants under Section 27 of the Exchange Act. *See supra* Section II. And Defendants do not

---

[10] https://www.follow-this.org/religious-investors-urge-exxon-to-drop-lawsuit-against-activist-shareholders/

challenge the allegations showing they have sufficient contacts with Texas to satisfy specific personal jurisdiction under Texas law. *See id*. But if the Court has any doubt, it should permit ExxonMobil to conduct jurisdictional discovery into Defendants' contacts with the United States and Texas.

## CONCLUSION

The Court should deny Defendants' motions to dismiss for lack of subject-matter jurisdiction and lack of personal jurisdiction. Alternatively, if there is any doubt about the outcome, the Court should grant ExxonMobil the opportunity to conduct jurisdictional discovery.

Dated: February 21, 2024                          Respectfully submitted,


                                                  /s/ *Mark W. Rasmussen*

Gregg J. Costa                                    Mark W. Rasmussen
Texas State Bar No. 24028160                      Texas State Bar No. 24086291
David Woodcock                                    Jonathan D. Guynn
Texas State Bar No. 24028140                      Texas State Bar No. 24120232
GIBSON, DUNN & CRUTCHER                           JONES DAY
2001 Ross Avenue, Suite 2100                      2727 North Harwood Street
Dallas, TX 75201-2923                             Dallas, TX 75201-1515
Telephone: +1.214.698.3211                        Telephone: +1.214.220.3939
Facsimile:  +1.214.571.2914                       Facsimile:  +1.214.969.5100
E-mail: gcosta@gibsondunn.com                     E-mail: mrasmussen@jonesday.com
E-mail: dwoodcock@gibsondunn.com                  E-mail: jguynn@jonesday.com

                                                  Noel J. Francisco (*pro hac vice* pending)
                                                  D.C. Bar No. 464752
                                                  Brett A. Shumate (admitted *pro hac vice*)
                                                  D.C. Bar No. 974673
                                                  Megan Lacy Owen
                                                  D.C. Bar No. 1007688
                                                  JONES DAY
                                                  51 Louisiana Avenue, N.W.
                                                  Washington, D.C. 20001-2113
                                                  Telephone: +1.202.879.3939
                                                  Facsimile:  +1.602.626.1700
                                                  E-mail: njfrancisco@jonesday.com
                                                  E-mail: bshumate@jonesday.com
                                                  E-mail: mlacyowen@jonesday.com


                    ATTORNEYS FOR PLAINTIFF


24