UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**EXXON MOBIL CORPORATION,**

Plaintiff,

v.

**No. 4:24-cv-00069-P**

**ARJUNA CAPITAL, LLC, ET AL.,**

Defendants.

## MEMORANDUM OPINION & ORDER

Before the Court are Defendants' Motions to Dismiss. ECF Nos. 22, 25.[1] Having considered the Motions, briefing, and applicable law, the Court **GRANTS** Defendant Follow This's Motion (ECF No. 25) and **DENIES** Defendant Arjuna Capital's Motion (ECF No. 22).

## BACKGROUND

The Securities Exchange Act of 1934 (the "Exchange Act") provides a comprehensive framework for the regulation of secondary securities markets in the United States. The Act empowers the SEC to craft rules and regulations that govern shareholder participation in corporate affairs via annual meetings and proxy votes. This case involves the 1998 amendments to Rule 14a-8. As amended, the Rule allows "any shareholder owning a relatively small amount of the company's shares" to submit proposals for consideration at annual shareholder meetings. While intended to increase shareholder participation, the amendments had unintended consequences. True, Rule 14a-8 gives diminutive shareholders a voice in corporate governance. However, it also gives activist shareholders a platform to push their agendas—often with little regard to their proposal's implications for other shareholders' portfolios.

---

[1]Follow This incorporates the arguments in Arjuna's Motion. *See* ECF No. 25. Thus, the Court rules on both, but only cites to/discusses Arjuna's. ECF No. 22. The Court signposts where actions by individual defendants are relevant.

But corporations are not without recourse. The Exchange Act enumerates several options for corporations confronted with activist proposals that don't create shareholder value. For instance, Rule 14a-8 specifies certain categorical exclusions whereby a corporation can omit a shareholder's proposal from consideration. For additional assurance, corporations excluding a proposal under the Rule can request a no-action letter from the SEC, thereby securing the Agency's promise not to go after the company because it excluded the proposal. Still, the amendments to Rule 14a-8 provide a substantial platform for activist shareholders and only a narrow set of options for corporations seeking to exclude unhelpful proposals.

Enter Defendants Arjuna Capital, LLC and Follow This. Activists both, Arjuna and Follow This follow a "Trojan Horse" model, aggregating enough shares to vote in various corporations and submitting proposals designed to combat climate change and reduce Big Oil's greenhouse gas emissions. For the past several years, Defendants have submitted proposals for consideration by the shareholders of Plaintiff Exxon-Mobil Corporation. While they argue these proposals create shareholder value, that's really beside the point: both Defendants are primarily driven by the fight against anthropogenic climate change. While not illegal, this approach is vexing for corporations and is aided by what Exxon calls "a flawed shareholder proposal and proxy voting process." And if Defendants' proposals added value for Exxon, its shareholders didn't see it, as they roundly rejected Defendants' 2022 and 2023 proposals. Undeterred, Defendants tried again, submitting the following proposal for Exxon's 2024 shareholder meeting:

> <u>Resolved</u>: Shareholders support the Company, by an advisory vote, to go beyond current plans, further accelerating the pace of emission reductions in the medium-term for its greenhouse gas (GHG) emissions across Scope 1, 2, and 3, and to summarize new plans, targets, and timetables.[2]

---

[2]*See* ECF No. 1 at 3 (the "2024 Proposal"). The 2024 Proposal contains other recommendations, though Exxon mainly takes issue with the above language.

As noted above, companies in Exxon's position would ordinarily pick the closest fit from Rule 14a-8's exclusions and request a no-action letter from the SEC to keep the proposal off their proxy statement. But this year, Exxon had enough. Rather than pursuing a no-action letter, Exxon sued Defendants in federal court,[3] seeking a declaratory judgment that Defendants' 2024 proposal is excludable.[4] Exxon's annual meeting is set for May 29, 2024. Under the Exchange Act, Exxon had to file its proxy statement with shareholder proposals by April 11. Exxon filed this lawsuit in late January, roughly two months ahead of that deadline. In response, Arjuna withdrew Defendants' proposal and promised "not [to] refile the proposal with Exxon at any point in the future."

Defendants thought their actions would put an end to Exxon's lawsuit. They were wrong. When Exxon moved forward with its case, Defendants moved to dismiss under Rule 12(b)(1). As Defendants see things, their retracted proposal and promise not to refile moot Exxon's claim, divesting this Court of subject-matter jurisdiction. They also contest personal jurisdiction, arguing Exxon endorses a "novel theory" that allows Exxon to "haul its shareholders into any court in the United States." Exxon sees things differently. It counters Defendants' mootness arguments with voluntary-cessation precedents. It counters Defendants' personal-jurisdiction arguments with appeals to both the Exchange Act and Texas's long-arm statute. As explained below, Exxon wins on subject-matter jurisdiction. For personal jurisdiction, Arjuna loses, but Follow This prevails.

---

[3]Exxon's decision to file in the Fort Worth Division of the Northern District of Texas perplexes. Although Exxon was previously headquartered in the Dallas Division, it has been headquartered in the Houston Division of the Southern District of Texas since July 2023. See ECF No 1 at 7. And the Complaint provides no clarity, as its venue assertion relates to the Northern District of Texas generally, not to this Division. *See id.* at 6–7. Perhaps that's why *not one* of the fifteen attorneys in this case is from Fort Worth.

[4]In relevant part, the Complaint asks the Court to "declar[e] that ExxonMobil may properly exclude the 2024 Proposal from its proxy statement under Rule 14a-8(i)(7) and (i)(12)." ECF No. 1 at 26. These exclusions correspond to proposals that relat[e] to the company's ordinary business operations" (17 C.F.R. § 240.14a-8(i)(7)) or are duplicative of previously rejected proposals (*Id.* § 240.14a-8(i)(12)). The exclusions themselves are irrelevant for the present jurisdictional analysis.

## LEGAL STANDARD

As courts of limited jurisdiction, federal courts "possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "A court must have the power to decide the claim before it (subject-matter jurisdiction) and power over the parties before it (personal jurisdiction) before it can resolve a case." *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017). If either is absent, defendants may move to dismiss under Rule 12. *See* FED. R. CIV. P. 12(b)(1). "A district court may dismiss a case under Rule 12(b)(1) based on '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *In re Southern Recycling, LLC*, 982 F.3d 374, 379 (5th Cir. 2020) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The burden of proof falls on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Standing is part of subject-matter jurisdiction. *Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 627 (5th Cir. 2021). To establish standing, there must be an "actual, ongoing contovers[y]." *Honig v. Doe*, 484 U.S. 305, 317 (1988). Courts use the familiar *Lujan* framework to ensure there is. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992) (requiring (1) an injury in fact that is (2) causally connected to a defendant and (3) likely to be redressed by a favorable decision). Standing erodes when a case is mooted. *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs., Inc.*, 528 U.S. 167, 189 (2000). "So if a plaintiff's stake in a lawsuit falls away, so too does our subject-matter jurisdiction." *Shemwell v. City of McKinney, Tex.*, 63 F.4th 480, 483 (5th Cir. 2023). Afterall, federal courts can't issue advisory opinions. *Carney v. Adams*, 592 U.S. 53, 64 (2020). And decisions on a moot case are advisory. *See Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368, 376 (5th Cir. 2022).

Plaintiffs also bear the burden for personal jurisdiction. *See Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 369 (5th Cir.

2024). "The guiding principle of specific[5] personal jurisdiction is whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id.* at 372 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980)). In short, personal jurisdiction must comport with due process. *See Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 222–23 (5th Cir. 2022). To this end, courts ask if a defendant has "minimum contacts" with the forum. *Int'l Shoe*, 326 U.S. at 324. If they do, "traditional conception[s] of fair play and substantial justice" are not offended by litigating there. *Id.*; *see also Asahi Metal Indus. v. Sup. Ct. of Cal.*, 480 U.S. 102, 113 (1987). Nevertheless, the Supreme Court "long ago rejected the notion that personal jurisdiction might turn on mechanical tests, or on conceptualistic . . . theories [like] the place of contracting or of performance." *Burger King v. Rudzewicz*, 471 U.S. 462, 478 (1985) (cleaned up).

## ANALYSIS

As noted, Defendants challenge subject-matter and personal jurisdiction. *See* ECF No. 22-1 at 12–26. For subject-matter, they contend Exxon's claim is moot. *See* ECF No. 22-1 at 12; *but see* ECF No. 31 at 15. For personal, they argue Exxon fails to plead jurisdiction under the Exchange Act or Texas's long-arm statute. *See* ECF No. 22-1 at 24; *but see* ECF No. 31 at 25. The Court addresses each argument in turn.

### A. The Court has subject-matter jurisdiction.

The Declaratory Judgment Act empowers federal courts to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Here, Exxon seeks a declaration that it may exclude the 2024 Proposal under Rule 14a-8(i)(7) and (i)(12) of the Exchange Act. *See* ECF No. 1 at 25. Yet Arjuna withdrew the

---

[5]Personal jurisdiction can be general or specific. *See Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919–20 (2011). General jurisdiction concerns defendants whose "continuous and systematic" presence renders them "essentially at home" in a forum. *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 324 (1945). That's irrelevant here. By contrast, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (cleaned up).

proposal and promised not to refile. *See* ECF No. 22-1 at 10. Defendants thus contend Exxon's claim is moot, as Exxon essentially asks for permission to exclude a non-existent proposal. *See id.* at 7 ("In refusing to dismiss this case following the withdrawal, Exxon has laid bare its true intention—to challenge how the SEC interprets and applies its own proxy proposal rules, without actually confronting the SEC itself."). Exxon pushes back, noting defendants cannot evade litigation by stopping their challenged conduct, only to pick up where they left off after a suit is dropped. *See* ECF No. 31 at 15–20. As explained below, even if Defendants are right regarding Exxon's intentions, Exxon has the winning argument.

1. <u>Defendants voluntarily ceased relevant conduct.</u>

"It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth*, 528 U.S. at 189 (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).[6] Arjuna tried to do that here, dropping their proposal within days of Exxon's lawsuit. *See* ECF No. 31 at 14. Like Follow This, Arjuna is publicly devoted to shareholder activism. *See* ECF No. 1 at 3. Yet discretion is sometimes the better part of valor, so it dropped the 2024 Proposal at the first hint of trouble. *See*

---

[6]A wrinkle arises when applying voluntary-cessation precedents to cases seeking declaratory relief. Cases applying the doctrine typically refer to "legality" and a defendant's "unlawful ends." *See, e.g.*, *Friends of the Earth*, 528 U.S. at 189; *Already*, 568 U.S. at 91. Defendants did nothing illegal here; rather, Exxon seeks a declaration of rights vis-à-vis *its* course of action. Still, the doctrine exists to ensure defendants cannot dodge unfavorable rulings. *See Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 324 (5th Cir. 2009) ("[T]he voluntary cessation of a complained-of activity by a defendant ordinarily does not moot a case: If defendants could eject plaintiffs from court on the eve of judgment, then resume the complained-of activity without fear of flouting the mandate of a court, plaintiffs would face the hassle, expense, and injustice of constantly relitigating their claims without the possibility of obtaining lasting relief."). Accordingly, the doctrine applies with equal force here despite the absence of illegal conduct by Defendants.

ECF No. 22-1 at 11. To drive the point home, Arjuna sent Exxon a letter on January 29, promising not to refile the proposal "at any time in the future." ECF No. 22-1 at 11.

Ordinarily, facing no proposal, Exxon's claim (and the Court's subject-matter jurisdiction) would vanish. *See Shemwell*, 63 F.4th at 483. That's because an opinion regarding exclusion of a withdrawn proposal would be advisory. *See Becerra*, 47 F.4th at 376. But not so fast. The voluntary-cessation doctrine requires more than platitudes to render a case moot; it requires proof that the offending conduct will not recur. *See Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007). If Defendants can evade suit by dropping their proposal, Exxon will never have its questions answered. *See Sossamon*, 560 F.3d at 324. Thus, to moot Exxon's claim, Defendants must show that it is "absolutely clear" the relevant conduct "could not reasonably be expected to recur." *K.P. v. LeBlanc*, 729 F.3d 427, 438 (5th Cir. 2013). They fail to do so.

2. It is not "absolutely clear" the offending conduct will not recur.

So the voluntary-cessation doctrine requires proof that Exxon will not reencounter Defendants' proposal. *See id.* Defendants say Arjuna's January 29 letter provides such proof, as it ostensibly immunizes Exxon from the proposal, whether as a proxy submission or as a floor item at Exxon's annual meeting. *See ECF No. 22-1 at 11, 14–20.* Exxon says the letter is too narrow to provide meaningful protection. *See ECF No. 31 at 14.* For instance, Exxon argues nothing in the letter would prevent Defendants from tweaking non-substantive parts of the proposal and firing away once more. *See id.* This argument persuades.

Defendants say Exxon "prognosticates that in the future, shareholders may submit proposals that could address 'substantially the same subject matter.'" ECF No. 22-1 at 20 (citing ECF No. 20 at 2). They say that's too speculative, as the law requires "concrete and particularized" injuries to establish standing. *See generally Lujan*, 504 U.S. at 560–61; *Spokeo v. Robbins*, 578 U.S. 330, 339 (2016). This is one of many areas of tension between declaratory judgments and standing. But the latter is still required for the former, as the Declaratory Judgment Act empowers courts to "declare rights and other legal

relations of any interested party . . . whether or not further relief is or could be prayed," as long as there's a "case of actual controversy." 28 U.S.C. § 2201. True, in arguing voluntary cessation, plaintiffs may not "rely on theories of Article III injury that would fail to establish standing in the first place." *Already*, 568 U.S. at 96. But the doctrine does not require exacting identicality. *See Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993) (noting it is not "only the possibility that the *selfsame* statute will be enacted that prevents a case from being moot").

As worded, Arjuna's letter allows Defendants to take the 2024 Proposal, add an Oxford comma here, shorten a sentence there, and submit the results anew for Exxon's shareholders. *See* ECF No. 22-2 at 32. If that's all it takes to circumvent the doctrine, voluntary-cessation precedents are useless. *See, e.g.*, *Friends of the Earth*, 528 U.S. at 189 (noting application of the doctrine must not "leave the defendant . . . free to return to his old ways"). And while Defendants critique Exxon's "vague and imagined scenarios," *see* ECF No. 22-1 at 20, Exxon can hardly be faulted for distrusting organizations devoted to shareholder activism. *See* ECF No. 31 at 16. Considering Defendants' core mission, Exxon's argument is far from a "sky-is-falling" hypothetical. Rather, the company's position is a rational response to entities categorically opposed to Big Oil. Exxon is big. And Exxon is Oil. And another court has already found at least Defendant has leadership that's "manifestly biased" against Exxon. *See* ECF No. 31 at 11.

Courts routinely apply the voluntary-cessation doctrine in similar cases. *See, e.g.*, *Jacksonville*, 508 U.S. at 662 (applying the doctrine where "a defendant could moot a case by repealing the challenged [action] and replacing it with one that differs only in some insignificant respect"). And while plaintiffs "cannot manufacture standing" based on "fears of hypothetical future harm," *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013), Exxon's position is far from untenable. Indeed, prior actions "[are] evidence bearing on" the likelihood that conduct recurs. *See City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983). Thus, Defendants have three consecutive years of similar proposals weighing against them.

8

At base, Exxon wins because it isn't required to take Defendants at their word. Although Arjuna withdrew the 2024 Proposal and vowed not to refile, "[s]uch a profession does not suffice to make a case moot." *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *see also City of Mesquite*, 455 U.S. at 289–90 & n.10 (noting courts examine whether the defendant may plausibly return to its conduct later). As a matter of law, Defendants' letter promising not to refile is toothless. Sparing a primer on 1L contract formation, Defendants' letter was a unilateral promise, not an enforceable contract. Absent an offer and acceptance, a meeting of the minds, consideration, and other elements not present here, Defendants would not face breach-of-contract liability if they changed their minds later. That's not to say a contract is always required. However, Defendants' pledge is not as sweeping and unequivocal as other stipulations which evaded the doctrine. *Cf. Already*, 568 U.S. at 93–94, 102 (analyzing the "breadth of the covenant" and finding the claim moot because the pledge "prohibit[ed] . . . any claim or any demand" going forward); *Acheson Hotels, LLC v. Laufer*, 600 U.S. 1, 5 (2023) (same).

Arjuna's letter forecloses a carbon-copy resubmission of the 2024 Proposal. *See* ECF No. 22-2 at 32. Because Defendants pledged far less than *Already* and *Acheson*, they don't get a get-out-of-court-free card. *See* ECF No. 31 at 18–19. Defendants nevertheless insist "Exxon's desire for an opinion on excludability in the abstract is insufficient to confer Article III standing." ECF No. 35 at 10. If true, Exxon cannot avoid mootness by invoking voluntary cessation. *See Already*, 568 U.S. at 96. Afterall, "[i]t is a federal court's judgment, not its opinion, that remedies an injury." *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023). Thus, if "petitioners can hope for nothing more than an opinion, [] they cannot satisfy Article III." *Id.*; *see also Hall v. Beals*, 396 U.S. 45, 48 (1969) (noting a case must be "a present, live controversy" for the court to "avoid advisory opinions on abstract propositions of law").

This is where "mootness has added some wrinkles that standing lacks." *Friends of the Earth*, 528 U.S. at 213 (Scalia, J. and Thomas, J., dissenting). "[J]ust as the initial suit can be brought (by way of a declaratory judgment) before the defendant actually violated the

plaintiff's alleged rights, so also the initial suit can be continued even though the defendant has stopped violating the plaintiff's alleged rights." *Id.* And though Defendants have not violated Exxon's rights, the voluntary cessation doctrine is simply a "presumption that the controversy reflected by the violation of alleged rights continues to exist." *Id.* (citation omitted). Or here, it's a presumption that Exxon retains its right to a declaratory judgment, notwithstanding the proposal's withdrawal. *See* 28 U.S.C. § 2201(a). And Exxon will never actualize that entitlement if the Court's jurisdictional lynchpin can be removed any time Exxon sues for declaratory relief. *See Haaland*, 599 U.S. at 293. Hence, the Court's "absolute clarity" standard. *See LeBlanc*, 729 F.3d at 438.

To conclude, Defendants attempt to have their cake and eat it, too. Arjuna's letter failed to assure Exxon that the 2024 Proposal will not resurface. As such, it does not escape Exxon's voluntary-cessation arguments. True, a declaratory judgment would inform Exxon of its rights vis-à-vis other proposals not at issue. But it would primarily inform Exxon of its rights should the 2024 Proposal resurrect. "Afterall, the point of a declaratory judgment 'is to establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by res judicata.'" *Haaland*, 599 U.S. at 293 (quoting 18A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 4446 (3d ed. Supp. 2022) (cleaned up)). Thus, because a ruling would elucidate Exxon's rights regarding the 2024 Proposal, the opinion would not be advisory. *See id.* (noting that without such effect, "a declaratory judgment is little more than an advisory opinion").[7]

---

[7]This speaks to an "underlying concern" in many cases: that "when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated, then it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). Here, a declaration regarding the 2024 Proposal is "the only relief Exxon has requested." ECF No. 22-1 at 15. That proposal was withdrawn. *See id.* While a declaratory judgment would have broader implications, *see* ECF No. 31 at 16, what matters is that Defendants have not shown with "absolute clarity" that Exxon won't see the proposal again. Thus, the Court can still offer Exxon "effectual relief." *Pap's A.M.*, 529 U.S. at 287.

Defendants are of course free to make a broader stipulation akin to those in *Already* or *Acheson*. That would moot Exxon's claim. But it's a roll of the dice: on one hand, it evades suit, on the other, a declaratory judgment may prove favorable for Defendants. At this juncture, it's not "absolutely clear" that Exxon will not face Defendants' proposal later— whether in an identical form or a "substantially similar" form. *See Jacksonville*, 508 U.S. at 662. Defendants don't carry their "formidable burden" to prove non-recurrence. *See Already*, 568 U.S. at 91. Because their conduct could "reasonably be expected to recur," Exxon's claim is not moot, and the Court's subject-matter jurisdiction is not jeopardized. *See LeBlanc*, 729 F.3d at 438.

### B. The Court has personal jurisdiction over Arjuna.

The Court must next ensure it has personal jurisdiction over Defendants. *See Lightfoot*, 580 U.S. at 95. If it doesn't, any ruling on Exxon's lawsuit is invalid. *See Broadcast Music, Inc. v. M.T.S. Enters., Inc.*, 811 F.2d 278, 281 (5th Cir. 1987) ("A court which lacks personal jurisdiction over a defendant cannot enter a valid judgment against that defendant."). The Court can only exercise jurisdiction if Defendants have sufficient contacts with this forum. *See Int'l Shoe*, 326 U.S. at 315. Otherwise, it offends notions of "fair play and substantial justice" to make them litigate here. *See id.* Exxon argues personal jurisdiction is proper under both the Exchange Act and Texas's long-arm statute.[8] *See* ECF No. 31 at 25–27. As explained below, Exxon's Exchange Act argument does not persuade; its argument under the Texas long-arm statute persuades for Arjuna, but not for Follow This.

### 1. The Court lacks personal jurisdiction over Defendants under the Exchange Act.

Defendants say Exxon's first argument rests on a "novel theory of personal jurisdiction" that allows Exxon to "haul its shareholders into any court in the United States." ECF No. 22-1 at 13. Case law suggests

---

[8]Citing a disparate case from the Northern District of Georgia, Arjuna's reply brief argues the Court shouldn't consider Exxon's long-arm arguments because they weren't raised in the Complaint. *See* ECF No. 35 at 12–13. Yet insofar as the Court is dutybound to ensure jurisdiction exists, *see Lightfoot*, 580 U.S. at 95, the Court is unpersuaded by such procedural nitpicking.

otherwise. Ordinarily, "where a state is attempting to get extraterritorial jurisdiction over a defendant, the inquiry is whether the defendant has had minimum contacts with the state." *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994). But that changes here, where the lawsuit is "based upon a federal statute providing for nationwide service of process." *Id.*; *see generally* 15 U.S.C. § 78aa (Exchange Act provision providing for nationwide service of process) (hereinafter "Section 27"). And "[i]t is black-letter law" in such cases that "the relevant inquiry is whether 'the defendant has had minimum contacts with the United States.'" ECF No. 31 at 25 (quoting *Busch*, 11 F.3d at 1258).

So normally courts examine a defendant's contacts with the forum *state*. *See Int'l Shoe*, 326 U.S. at 324. But for cases like this, we examine contacts with the forum *nation*. *See Busch*, 11 F.3d at 1258. The Court understands if Defendants find that confounding. Indeed, the *Busch* analysis seems to erode the liminal space between personal jurisdiction and service of process, which "are conceptually distinct issues." *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 826 (5th Cir. 1996). Nevertheless, the Fifth Circuit has consistently upheld *Busch*'s nationwide jurisdictional inquiry. *See Trust Co. of La. v. N.N.P., Inc.*, 104 F.3d 1478, 1487 (5th Cir. 1997). Thus, *Busch* remains the law of the land, even if courts apply it "with grave misgivings regarding the authority upon which we rely." *Bellaire Gen. Hosp.*, 97 F.3d at 826. Because Defendants have sufficient contacts with the United States, the inquiry would typically stop here. *See* ECF No. 31 at 25 (noting "Arjuna is based in the United States" and "Follow This has had multiple contacts with the United States in connection with . . . this case"). However, Defendants make a textualist argument—passingly dealt with in Exxon's briefing—that inverts this analysis.

Defendants say Exxon reads the Exchange Act too broadly. *See* ECF No. 22-1 at 24. The Parties lose the forest for the trees on this point, devoting most of their briefing to the *Busch* analysis discussed above. Exxon wins on that point. But there's a condition precedent to Exxon's argument: namely, that Section 27 applies. Put differently, *Busch*'s nationwide jurisdictional inquiry only controls if Section 27 applies to

this lawsuit. *See Busch*, 11 F.3d at 1258. As Defendants observe, the Act's operative language covers actions "to enforce any liability or duty created by this chapter or rules and regulations thereunder." ECF No. 22-1 at 24 (citing 15 U.S.C. § 78aa). As Defendants see things, even if Exxon is right that certain actions may be brought in "any such district" of the United States, *see* 15 U.S.C. § 78aa, this case doesn't fit that taxonomy. *See* ECF No. 22-1 at 24–25.

Exxon devotes two whole sentences to this argument, brushing aside the plain meaning of the words in Section 27: "The complaint seeks a declaration that the 2024 Proposal is excludable under Rule 14a-8. Thus, ExxonMobil seeks to enforce liabilities and duties owed under the Exchange Act, which is all that is required for Section 27 to apply." ECF No. 31 at 25. But the syllogism's logic breaks down when pressed. Section 27 applies to cases "to enforce any liability or duty created by this chapter or the rules and regulations thereunder." 15 U.S.C. § 78aa. Exxon seeks a declaration that it may exclude Defendants' proposal under Rule 14a-8. *See* ECF No. 1. The Court is unsure how Exxon believes such a request involves enforcement of liabilities and duties owed under the Act.

The Court agrees with Defendants that "Exxon's position . . . is contrary to both the letter and spirit of Section 27." ECF No. 22-1 at 24. Start with the text. Section 27 provides for nationwide service of process for cases "to enforce any liability or duty created by this chapter or rules and regulations thereunder" or for cases "to enjoin any violation of such chapter or rules and regulations." 15 U.S.C. § 78aa. Exxon's case involves a "rule thereunder." *See* ECF No. 1. Thus, Section 27 applies if Exxon seeks to (1) enforce a liability or duty under the Act or (2) enjoin a violation of the Act. It does neither.[9]

---

[9]*See, e.g.*, *Enforce*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To give force or effect to (a law, etc.); to compel obedience to."); *Duty*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A legal obligation that is owed or due to another and that needs to be satisfied; that which one is bound to do, and for which somebody else has a corresponding right."); *Liability*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The state of being bound or obliged in law or justice to do, pay, or make good something; legal responsibility."); *Enjoin*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To legally prohibit or restrain by

Because Exxon seeks a declaratory judgment, its lawsuit seeks to neither enforce a liability/duty or enjoin a violation. Its argument thus contravenes the text of Section 27. But *Busch* presents a minor wrinkle. There, the Fifth Circuit said the nationwide inquiry applies for suits "based upon a federal statute providing for nationwide service of process." 11 F.3d at 1258. Read in isolation, that could apply whenever a statute provides for nationwide service of process in whole or in part. Yet *Busch* was a standard case involving alleged violations of the Exchange Act, not a suit for declaratory judgment. *See id.* at 1256. Thus, Section 27 clearly applied, and the court never analyzed the contours of its jurisdictional inquiry. *See id.* at 1258.

Taken to their logical extreme, Exxon's appeals to *Busch* would authorize a nationwide jurisdictional inquiry for a statute that created 100 causes of action but allowed nationwide service of process for one.[10] This interpretation takes *Busch* too far. Rather, *Busch* expands the minimum-contacts inquiry nationwide for cases encompassed in the service-of-process provision. *See id.* That's usually a non-issue, as declaratory judgment actions are a small fraction of Exchange Act cases and many statutes providing for nationwide service do so for all suits brought thereunder. But the Exchange Act doesn't—indeed, it couldn't, as the Exchange Act was enacted a week *before* the Declaratory Judgment Act.[11] Thus, Exxon's argument stands in contravention of Section 27's text.

---

injunction."); *Violation*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("An infraction or breach of the law, a transgression.").

[10] While extreme, the example highlights a tension when *Busch* is overextended. Many statutes provide for nationwide service of process for limited types of actions or under limited circumstances. *See, e.g.*, Sherman Act, 15 U.S.C. § 5 (1982) (allowing nationwide service only if the court finds "that the ends of justice require that other parties should be brought before the court"); Racketeer Influenced & Corrupt Organizations Act, 18 U.S.C. § 1965 (1982) (allowing nationwide service for enforcement actions if "parties residing in any other district [must] be brought before the court"). However *Busch* should be applied, it cannot be extended to contradict such statutory provisions.

[11] *See* Securities Exchange Act of 1934, ch. 404, 48 Stat. 881 (1934) (signed June 6, 1934); Federal Declaratory Judgment Act, ch. 343, 48 Stat. 955 (1934) (signed June 14, 1934).

The Court's suspicions are aroused by appeals to the "spirit" of legislation, as ink on paper typically lacks a soul. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("The starting point in discerning congressional intent is the existing statutory text."). But legislative history (to the extent it speaks to such "spirit") can help understand hard texts. *See U.S. v. Kaluza*, 780 F.3d 647, 658 (5th Cir. 2015). And congressional records are clear that the Exchange Act was enacted to create an Agency (the SEC) and a regime (the Act and its rules and regulations) to effectuate greater transparency obligations enumerated in the 1933 Securities Act.[12] It was the Great Depression's peak, and public and congressional sentiment attributed the nation's economic woes to unchecked corporations and unregulated securities markets.[13]

The 1933 and 1934 acts were Congress's answer. *See United States v. O'Hagan*, 521 U.S. 642, 651 (1997) (observing that the '33 and '34 acts served to "insure honest securities markets and thereby promote investor confidence"). Corporate transparency and accountability were critical. *See id.* Exxon now forwards the odd argument that an Act designed to hold corporations accountable to jurisdictionally diverse shareholders gives corporations an end-run around typical state-specific personal jurisdiction inquiries. *See* ECF No. 31 at 25. But that just underscores the illogic of Exxon's position, it doesn't inform the Court's analysis. Section 27 is unambiguous. Thus, while legislative history may provide helpful context, the Court need not rely on it as an interpretive aid. *See Kaluza*, 780 F.3d at 658.

At the end of the day, unambiguous legislative text controls. *See Henson v. Santander Consumer USA, Inc.*, 582 U.S. 79, 89 (2017) (noting federal courts cannot "presume . . . that any result consistent with [one party's] account of the statute's overarching goal must be the law"). Legislators often draft legislation hastily, with little regard to the legal implications their words carry. Perhaps the broad language of Section 27 was intended to encompass any lawsuits under the Exchange Act, including yet unimagined actions like suits for declaratory judgment.

---

[12]*See* Charles O'Kelley & Robert Thompson, *Corporations & Other Business Associations* 948–49 (2017).

[13]*See id.*

That argument is plausible. But Exxon's problem is that the Act *doesn't say that*. Thus, for the reasons above, Exxon fails to plead personal jurisdiction under the Exchange Act. Nevertheless, as explained below, the Court has personal jurisdiction through Texas's long-arm statute.

> 2. The Court has personal jurisdiction over Arjuna under Texas's long-arm statute.

Personal jurisdiction is governed "by the law of the state in which the federal court sits." *Bulkley & Assocs., LLC v. OSHA*, 1 F.4th 346, 351 (5th Cir. 2021). "In Texas, courts evaluate personal jurisdiction over nonresident defendants through a two-step inquiry" to ensure "compliance with the state's long-arm statute and the Due Process Clause." *Id.* But Texas's long-arm statute "extends to the limits of federal due process." *Sangha v. Navig8 ShipManagement Private, Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)); *accord Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007); *see generally* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042. Thus, the usual two-step inquiry "collapses into one federal due process analysis." *Sangha*, 882 F.3d at 101 (quoting *Johnston*, 523 F.3d at 609). So the Court must conduct its usual minimum-contacts inquiry to ensure it has personal jurisdiction over Defendants. *See Int'l Shoe*, 326 U.S. at 316.

The Court asks three questions to do so. *Bulkley*, 1 F.4th at 351. *First*, did the defendant "purposefully direct" activity to the state or "purposefully avail itself" of the state's privileges? *Def. Distrib. v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020). *Second*, does the case "arise out of or result from" the forum-directed activity? *Grewal*, 971 F.3d at 490 (citation omitted). *Third*, all else equal, is it "fair and reasonable" to exercise jurisdiction? *Id.* The first and third questions often bleed together, as the fairness/reasonability of jurisdiction is not infrequently a function of the nature/extent of the defendant's contacts. *See id.* Asking those questions here, the Court finds personal jurisdiction is appropriate over Arjuna, but not over Follow This.

The first two questions are easy. *First*, Defendants have submitted multiple shareholder proposals to Exxon in Texas. *See* ECF No. 31 at 26. *Second*, "it is undisputed that ExxonMobil's cause of action arises from

16

those contacts." ECF No. 31 at 26; *see generally Grewal*, 971 F.3d at 490. Accordingly, the case comes down to the "fair and reasonable" inquiry. *See id.* This is where things get tricky.

It's well-settled that "[a] single act directed toward Texas" can confer jurisdiction. *Wien Air Ak. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999); *see also Calder v. Jones*, 465 U.S. 783, 789 (1984) (finding California had jurisdiction because tort in Florida had substantial effects in California). But not always. *See Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999) ("Although a single act by the defendant directed at the forum state can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted, entering into a contract with an out-of-state party, without more, is not sufficient."). What matters is that the lawsuit relates to the forum-directed activity, even if the activity was minimal. *See Ford Motor Co. v. Mon. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021); *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993). And the "fair and reasonable" inquiry is always case-specific. *See Ford*, 592 U.S. at 362. An unfortunate byproduct is that personal-jurisdiction precedents vary significantly, with few controlling broadly across cases.

Conducting a case-specific analysis here, start with the forum-directed activity. Arjuna and Follow This co-filed the 2024 Proposal. *See* ECF No. 22-1 at 9. It wasn't their first. *Id.* Arjuna is a Delaware LLC with a principal place of business in North Carolina and another office in Massachusetts. *Id.* at 8. Follow This is an association organized under the law of the Netherlands, with its principal place of business in Amsterdam. *Id.* at 9. Neither set foot in Texas to submit the 2024 Proposal or its predecessors. *See* ECF No. 35 at 13. Moreover, the Court is unaware of any Fifth Circuit precedent that deems submission of a shareholder proposal sufficient by itself.

Without a clear answer in case law, the Court must determine whether its fair to make Defendants litigate in Texas because they submitted a shareholder proposal to a Texas-based corporation. *See generally Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021) (noting "[a] defendant must have 'fair warning' that [its] activities may subject [it] to another state's jurisdiction" so it can

17

"structure its primary conduct to lessen or avoid exposure to a given State's courts"). To do so, the Court considers: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interests of the several states in furthering fundamental social policies." *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006) (quoting *Felch v. Transportes Lar-Mex SA De CV*, 92 F.3d 320, 324 (5th Cir. 1996)). Yet the analysis is "fact intensive and no one element is decisive." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

The corpus of case law evaluating factors four and five is robust but unhelpful here. Rather, this case comes down to three interests: Defendants' interest in not litigating an away game (factor one), Exxon's interest in litigating a home game (factor three), and Texas's interest in hosting (factor two). On balance, these suggest personal jurisdiction is appropriate over Arjuna, but not over Follow This.

### i. *The Burden on the Non-Resident Defendant*

To state the obvious, litigating in Texas is suboptimal for Defendants. Neither offices here, has agents here, files taxes here, or otherwise maintains a presence here. *See* ECF No. 22-1 at 8–9. Neither set foot here to submit the 2024 Proposal. *Id.* And Texas is a long way from North Carolina and a longer way from Amsterdam. Thus, it's uncontested that Defendants' contacts do not confer general personal jurisdiction. *See Goodyear*, 564 U.S. at 919–20. Specific jurisdiction is another matter. *See id.* As it relates to this lawsuit, Defendants both knew Exxon was in Texas when they sent their proposal to Exxon's Texas-based corporate address. *See* ECF No. 1 at 7, 23. And it's reasonable to think Exxon will review proposals where they're received.

Defendants emphasize case law suggesting a simple act of communication can't trigger jurisdiction in a foreign forum. *See* ECF No. 35 at 13 (citing *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007)). In *Moncrief*, the Fifth Circuit affirmed Judge Means' jurisdictional dismissal, noting "[a]n exchange of communication . . . does not, by itself, constitute the required purposeful availment of

the benefits and protections of Texas law." 481 F.3d at 312. It's uncertain whether Defendants' lawful submission of a shareholder proposal should, either. But *Moncrief* involved contract negotiations "where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract [was] centered outside of Texas." 481 F.3d at 312. Thus, the Fifth Circuit agreed that it would be unfair to haul a Russian defendant to Texas to litigate a case otherwise unconnected to the state. *See id.*

But this case is different. Here, Defendants sent a proposal to a Texas-based corporation's Texas address; a proposal logically considered at the corporation's Texas-based nerve center. If this case involved a contract like *Moncrief*, the "contract" would be centered here. Still, the Court must consider notions of fairness/reasonableness. Geography helps Follow This more than Arjuna on this point. Like the Russian entity in *Moncrief*, Follow This is domiciled in a foreign country. *See* ECF No. 22-1 at 9. While Arjuna's misfortunes may be a simple function of geography, the fact remains that it is more unfair/unreasonable for Follow This to litigate here than it is for Arjuna. *See Johnston*, 523 F.3d at 617 (discussing the heightened burden of litigating "in a foreign legal system"). Case law applying the *Busch* nationwide jurisdictional inquiry often hinge on this fact. *See, e.g.*, *Bellaire Gen. Hosp.*, 97 F.3d at 826 (observing that in cases under a statute providing for nationwide service of process, "it does not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction *over a defendant residing within the United States*") (emphasis added). Further, while the nomenclature's importance is unclear, Arjuna was the 2024 Proposal's "lead filer," while Follow This was a co-filer. *See* ECF No. 22-1 at 9.

Differential impacts aside, both Defendants will be burdened by litigating in Texas, as they would likely rather be golfing than traveling to Fort Worth for court proceedings. But this is a declaratory judgment action. *See* ECF No. 1. Thus, the Court anticipates resolving Exxon's claim on the papers, rendering the burden on both Defendants minimal. For now, what's clear is that Defendants purposefully directed activity toward Texas that led to Exxon's lawsuit, which suggests jurisdiction is proper. *See* ECF No. 31 at 26. Taken alone, this factor wouldn't

undermine jurisdiction over either Defendant, though litigating in Texas would deracinate Follow This more than Arjuna. Next consider Exxon's interest.

### ii.    The Plaintiff's Interest in Securing Relief

Exxon is at home in Texas and considered the 2024 Proposal here. *See* ECF No. 1 at 7, 23. If Exxon can't get its day in court here, it will be hard pressed to sue over the 2024 Proposal anywhere considering Defendants' diverse geographic footprint. *See Helicotperos Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 419 & n.13 (1984). Thus, though Defendants didn't commit a tort, the Court's analysis draws from the *Calder* effects test. *See Calder*, 465 U.S. at 787 ("The fact that the actions causing the effects in California were performed outside the state did not prevent the State from asserting jurisdiction over a cause of action arising out of those effects."). Here, Defendants sent their proposal to Texas and could have reasonably known its effects would be felt here. *See id.*; *see also Cent. Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376, 382 & n.6 (5th Cir. 2003) ("[T]his circuit has held that a nonresident can establish contact with the forum by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state." (citation omitted)). Exxon thus has an interest in keeping the case here.

Given this case can be resolved without hearings and with minimal travel burden, Exxon's interest in litigating here likely outweighs Defendants' interests in not. *See Johnston*, 523 F.3d at 617. If either Defendant has a plausible case otherwise, it's Follow This. *See Asahi*, 480 U.S. at 115 (noting foreign interests are best served "by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by the minimal interests on the part of the plaintiff or the forum State"). But that interest must always be analyzed with an eye toward Exxon's interest. Here, Exxon can still get the declaratory relief it seeks without Follow This. The claim would still be live, and Exxon would still get a legal determination of excludability—which is "the only relief Exxon has requested." ECF No. 22-1 at 15. Thus,

this factor suggests jurisdiction may be appropriate over Arjuna and inappropriate over Follow This.

### iii.    The Forum State's Interests

Turning finally to Texas, the state has an interest in keeping the case here. Exxon is at home in Texas and contributes enormously to the state's economy. *See generally* ECF No. 1 at 7. States have an interest in litigation initiated by their citizens. *See Johnston*, 523 F.3d at 616. And the bigger the party, the bigger the interest. *See id.* But more than one jurisdiction may have interests in a case. *See Burger King*, 471 U.S. at 483. Here, the Netherlands has a strong interest in not having its citizens needlessly dragged to litigate in other jurisdictions. *See Asahi*, 480 U.S. at 115. Thus, the Court must determine which jurisdiction, if any, has the "bigger" interest vis-à-vis the Parties to this case. *See id.*

Texas has a strong paternal interest in this case because an outcome will elucidate rights important to a key player in the Texas economy. *See In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 592 (5th Cir. 2014). Courts often conduct the state-interest analysis perfunctorily. But its worthwhile to consider the actual nature of a forum state's interest—its not enough to accept such interest on fiat. It doesn't help when, as here, a case is filed in a venue unrelated to the cause of action. While venue and jurisdiction are conceptually distinct, attenuated venue facts can detract from otherwise solid jurisdictional facts. Here, Exxon's venue may be built on sand, but its jurisdiction is built on stone.

In July 2023, Exxon moved its HQ from the Dallas Division of the Northern District of Texas to the Houston Division of the Southern District of Texas. *See* ECF No. 1 at 7. Exxon says venue is proper because "the 2023 Proposal and the 2022 Proposal [neither of which are at issue here] were delivered in this district" and Exxon held its annual meetings here. *Id.* at 6. Missing from the Complaint are any facts that suggest those meetings occurred in the Fort Worth Division, rather than the Dallas Division, where Exxon has a campus. *See id.* The city would

doubtless welcome Exxon should the company wish to move here.[14] And Exxon would likely benefit from having Fort Worth attorneys on its cases, as Cowtown's legal community has long represented the titans of Texas's oil and gas industry.[15] For now, however, Exxon's focus is elsewhere. *See* ECF No. 1 at 7.

But the case's weak ties to Fort Worth should not detract from its strong ties to Texas. Because Exxon contributes substantially to the state's bottom line, Texas's interest in this litigation is beyond dispute. *See World-Wide Volkswagen*, 444 U.S. at 297–98. Between competing alternatives, North Carolina and the Netherlands lack skin in the game vis-à-vis resolution of Exxon's claim. *See id.*; *see also Hall*, 466 U.S. at 414. Yet however strong Texas's interests in the case may be, the Court must still evaluate the Netherlands' interests in Follow This. *See Asahi*, 480 U.S. at 115. As noted, this case could probably proceed with minimal burden to Follow This. But insofar as they aren't necessary to resolve Exxon's claim, that fact weighs *more* in their favor, not less. That's especially true considering the Court's obligation to exercise "great care and reserve . . . when extending our notions of personal jurisdiction to the international field." *United States v. First Nat'l City Bank*, 379 U.S. 378, 404 (1965) (Harlan, J., dissenting) (collecting cases). Thus, Texas's interest in this case clearly outweighs the burden on Arjuna, but not on Follow This.

## CONCLUSION

For the above reasons, the Court has subject-matter jurisdiction over this lawsuit and personal jurisdiction over Arjuna. Accordingly, the Court **GRANTS** Follow This's Motion (ECF No. 25) and **DENIES** Arjuna's Motion (ECF No. 22).

---

[14]To get the process started, *see* City of Fort Worth, Business Services (last visited May 21, 2024), https://www.fortworthtexas.gov/business.

[15]*See* JAMES RESTON, JR., THE LONE STAR: THE LIFE OF JOHN CONNALLY, 156–57, 161 (1989) (discussing Fort Worth's legal movers and shakers that facilitated the rise of the Moncrief, Carter, Bass, and Richardson oil empires); Dee J. Kelly, Memoirs, 55, 59–71 (2019) (same); *see also* BRYAN BURROUGH, THE BIG RICH, 50–51, 94, 100, 252, 270–71, 307, 320 (2009) (discussing the city's ties to Big Oil and noting that, in Fort Worth, an oilman could have "a good life, a Texas life").

While Exxon seeks jurisdictional discovery should the Court side with either Defendant, *see* ECF No. 31 at 27, jurisdictional discovery is a matter of trial court discretion. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). And jurisdictional discovery is generally unpopular where it could become a fishing expedition for ties with a defendant domiciled in a foreign nation. *See Kelly v. Syria Shell Petrol. Dev. B.V.*, 213 F.3d 841, 849 (5th Cir. 2000). Seeing no need to invite that for a non-essential defendant here, the Court **DENIES** Exxon's request for jurisdictional discovery. ECF No. 31 at 27.

**SO ORDERED** on this **22nd day** of **May 2024.**

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE