**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | No. 4:24-cv-00069-P |
| | § | |
| ARJUNA CAPITAL, LLC and FOLLOW THIS, | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PLAINTIFF'S BRIEF ADDRESSING MOOTNESS
<u>FOLLOWING ARJUNA'S MAY 27, 2024, LETTER</u>**

**INTRODUCTION**

Arjuna Capital, LLC ("Arjuna") has twice attempted to undercut Exxon Mobil Corporation's ("ExxonMobil") claims that the 2024 Proposal[1] is excludable under the SEC's Ordinary Business and Resubmission Rules. Yet Arjuna's efforts to moot this case through half measures fail to satisfy Arjuna's "formidable burden" of showing it is "absolutely clear" "that the 2024 Proposal will not resurface." ECF 37 ("Opinion" or "Op.") at 10–11. Initially, Arjuna withdrew the 2024 Proposal and made a "toothless" promise never to resubmit it to ExxonMobil. *Id.* at 9. The Court denied Arjuna's motion to dismiss because "it's not 'absolutely clear' that Exxon will not face Defendants' proposal later—whether in an identical form or a 'substantially similar' form." *Id.* at 11.

Arjuna's second attempt, although broader than the first, likewise fails to moot the case. Arjuna "continues to defend" the propriety of the 2024 Proposal as not excludable under the SEC's Ordinary Business and Resubmission Rules, *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329 (5th Cir. 2020), claiming that it was "consistent with, and indeed necessary for, securing future financial success" and characterizing this lawsuit (and ExxonMobil's motives) as an "assault on the system of shareholder democracy," ECF 41, at 1. Its continued defense of the 2024 Proposal deprives ExxonMobil of the relief that it seeks—"a legal determination of excludability," Op. 20—and demonstrates that there remains a live "dispute over the legality of the challenged practices," *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953).

Determining "Exxon's rights regarding the 2024 Proposal" would provide effectual relief, Op. 10, because it is not hard to "imagine" multiple scenarios in which the Proposal might

---

[1] Capitalized terms not defined in this brief have the same meaning as in ExxonMobil's Opposition to Defendants' Motions to Dismiss, ECF 31.

resurface, *Dierlam v. Trump*, 977 F.3d 471, 476–77 (5th Cir. 2020) (cleaned up). For instance, Arjuna has not disclaimed working on, assisting with, or resubmitting the 2024 Proposal as the representative of another shareholder. Nor has Arjuna renounced coordinating behind the scenes with Follow This, the Interfaith Center on Corporate Responsibility ("ICCR"), or other "organizations devoted to shareholder activism" to resubmit the 2024 Proposal—or a substantially similar one—in the future. Op. 8. Indeed, Arjuna is a member of ICCR, which has scores of activist shareholders who could resubmit the Proposal next year. *See* ICCR, *ExxonMobil Investors Send Strong Message of Disapproval Over the Company's Lawsuit Seeking to Silence Shareholders* (May 29, 2024), https://tinyurl.com/2c9rmjy6. A declaratory judgment applying the Ordinary Business and Resubmission Rules to the 2024 Proposal would "inform Exxon of its rights should" Arjuna "resurrect" the Proposal by working through—or on behalf of—one of the many other serial filers in its vast network of activist shareholders. *Id*. at 10. The Court could prevent Arjuna from attempting to skirt its promise by colluding with other activist shareholders to resubmit the 2024 Proposal in its stead. Because Arjuna's letter does not guarantee "with 'absolute clarity' that Exxon won't see that proposal again," the Court should "still offer ExxonMobil 'effectual relief.'" *Id*. at 10 n.7.

Aside from being incomplete, Arjuna's May 27 letter cannot moot the case because standing alone it is no more than "a unilateral promise." *Id*. at 9. Although Arjuna dressed up its second attempt as an "unconditional" and "irrevocable" "covenant" to resemble the covenant in *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013), Arjuna cannot so easily moot this case. The promise in *Already* was reduced to a legally binding judgment through an order dismissing claims with prejudice, whereas Arjuna's empty promise does not provide ExxonMobil with an enforceable contract or binding judgment. Transparency is essential because Arjuna "has leadership that's

'manifestly biased' against Exxon." Op. 8. ExxonMobil has offered to discuss with Arjuna a formal agreement and stipulated judgment that would try to find a way that could address ExxonMobil's concerns, *see* ExxonMobil's Appendix ("App."), but unless Arjuna's unilateral promise is converted into a transparent and binding judgment that the Court could enforce if the 2024 Proposal resurfaces in the future, this case remains distinguishable from *Already*.

This is particularly true because Arjuna's letter continues to defend the propriety of the Proposal they so quickly withdrew as soon as it was challenged. It continues to assert the Proposal is not excludable under the SEC's Ordinary Business and Resubmission Rules. It accuses ExxonMobil of waging a "war on shareholder rights" and suggests ExxonMobil's "management and the Board have abandoned any commitment to good governance." ECF 41, at 1. And Arjuna goes to the extreme of working with activist organizations of which they are a member to call on shareholders to vote against ExxonMobil's directors. Engaging in such conduct, even after withdrawing their Proposal and claiming they will not resubmit it, undermines Arjuna's assertion that this case is moot. Without the certainty of a binding court judgment, Arjuna's latest promise remains "toothless" and unenforceable as a matter of *res judicata*. This case is not moot.

**ARGUMENT**

## I.      Arjuna's Letter Did Not Render ExxonMobil's Claims Moot.

Arjuna's latest promise still falls short of satisfying Arjuna's heavy burden to show with "absolute certainty" that ExxonMobil will not see another proposal like the 2024 Proposal in the future. *Fenves*, 979 F.3d at 329. Voluntary cessation of an action cannot moot a case if "there is no controlling statement of future intention, the change in conduct is suspiciously timed, and the defendant continues to defend the challenged behavior." *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1089–90 (5th Cir. 2023). This case continues to satisfy each point of that test, especially given the statement in Arjuna's May 27 letter that ExxonMobil's management and Board have abandoned

any commitment to good governance. ECF 41, at 1. Unless Arjuna's unilateral promise is broadened and converted into a judgment of excludability under the SEC's Ordinary Business and Resubmission Rules, ExxonMobil has no assurance that Arjuna's offending conduct will not recur.

### A.      Arjuna Continues To Defend The 2024 Proposal.

To start, this case is not moot because Arjuna "continues to defend the" 2024 Proposal, demonstrating that a live case or controversy remains. *Fenves*, 979 F.3d at 329 (case not moot where university was "still defending the legality of its original policies"); *Netflix*, 88 F.4th at 1090 (case not moot where prosecutor "continue[d] to defend the challenged behavior" by continuing to "defend the constitutionality" of the charging statute); *see also Chafin v. Chafin*, 568 U.S. 165, 173 (2013) (fact that parties "continue[d] to vigorously contest the question" demonstrated continued adversity); *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 702 (2007) (fact that school district "vigorously defend[ed] its program's constitutionality" weighed against mootness).

Arjuna has repeatedly defended the propriety of its 2024 Proposal in the face of ExxonMobil's claims that it is subject to exclusion under the Ordinary Business and Resubmission Rules. In its reply in support of its motion to dismiss, Arjuna argued that its past proposals that were substantially similar to the 2024 Proposal "have routinely drawn the support of shareholders" and that they "serve as an important element of the corporate governance process" even when they have "fail[ed] to garner majority approval." ECF 35 at 4. Further, Arjuna defended its collusion with other activists to submit similar proposals as constitutionally protected. *See id.* at 3.

Arjuna's most recent letter—sent on May 27, days after the Court's ruling—doubles down on those claims. Given Arjuna's continued defense of the Proposal, the substance and timing of the May 27 letter confirms that it is purely litigation tactic, not a genuine change of position. *See Fenves*, 979 F.3d at 329 ("suspicious timing"). Arjuna defends the 2024 Proposal and attacks

ExxonMobil's intentions behind filing the lawsuit to seek a legal determination of excludability. ECF 41 at 1 (describing the lawsuit as an "assault on the system of shareholder democracy" and an attempt to "silence all shareholders who may attempt to raise similar concerns" as Arjuna's proposal). It also insists that the 2024 Proposal is "consistent with, and indeed necessary for, securing future financial success." *Id.* In short, the letter makes clear that the parties continue to disagree about the application of the Ordinary Business and Resubmission Rules to the 2024 Proposal. The letter thus confirms that there remains "concrete adverseness" between the parties. *Chafin*, 568 U.S. at 173. Because Arjuna "continues to defend" the 2024 Proposal with vigor, this case is not moot. *Netflix*, 88 F.4th at 1090.

**B.    The Proposal Could Still Resurface In the Future.**

Next, this case is not moot because Arjuna has made no "controlling statement of future intention" to eliminate the possibility that the 2024 Proposal might resurface in the future. *Fenves*, 979 F.3d at 328, 330. In particular, Arjuna's new promise does not prevent it from acting as a representative of an ExxonMobil shareholder, like Arjuna did when it submitted the 2024 Proposal on behalf of two clients. *See* ECF 1 ¶ 8.[2] Nor does it prevent Arjuna from colluding behind the scenes with Follow This, ICCR, and other activist shareholders to resubmit the same or similar proposals in the future, as it has done in the past. *See id.* ¶¶ 9, 64–67. Instead, Arjuna reserves its ability to conspire with other shareholders to have the 2024 Proposal submitted again next year. "Considering Defendants' core mission" and years of submitting "similar proposals," this is "far from a 'sky-is-falling' hypothetical." Op. 8.

---

[2] SEC rules permit shareholders to present a proposal through a designated representative. Activist organizations like Arjuna frequently act in this representative capacity, allowing them to submit proposals even if they do not hold any shares in a company.  In addition, SEC rules allow multiple shareholders to jointly submit a proposal, with one acting as "lead filer" and the other as "co-filer."

As a result of Arjuna's reservation, ExxonMobil lacks "'absolute clarity' that [it] won't see the proposal again." *Id.* at 10 n.7. As its new promise proclaims, Arjuna is "far from alone" in engaging in shareholder activism relating to "environmental and social issues," including "climate risk." ECF 41 at 1. Arjuna has made no argument resisting the Complaint's allegation that it has collaborated with other activists "to submit and support each other's shareholder proposals" in the past. ECF 1 ¶ 64. To the contrary, Arjuna insists that engaging in such collusion in the future is protected First Amendment activity. *See* ECF 35 at 3.[3] Arjuna's new offer does nothing to change that position or its "core mission." Op. 8. Indeed, under the terms of its new promise, Arjuna could work behind the scenes to enlist another shareholder—including another ICCR member and potentially Follow This itself, after it was dismissed from this case—to submit the 2024 Proposal in 2025 with only immaterial changes. *See id.* (noting that Arjuna's letter allows Follow This to "take the 2024 Proposal, add an Oxford comma here, shorten a sentence there, and submit the results anew for Exxon's shareholders.").

ExxonMobil identified this deficiency in its response to Arjuna's letter. *See* App. A.002. Arjuna, however, has thus far not offered ExxonMobil any further assurance. Arjuna's "consecutive years of similar proposals," Op. 8, and avowed intention to work with other shareholders to advance its mission, make it far from "'absolutely clear' that Exxon will not face Defendants' proposal later"—whether Arjuna coordinates with Follow This or another entity to submit it. *Id.* at 11.

---

[3] This argument is baseless. If Arjuna can be enjoined from itself resubmitting the same or a substantially similar proposal in the future, then it can likewise be enjoined from colluding with a third party to do the same.

**C.      Arjuna's Unilateral Promise Is Not A Binding Judgment.**

Critically, Arjuna's new promise remains "toothless" because there has been no "meeting of the minds" between the parties about the scope of relief. *Id*. at 9. Indeed, ExxonMobil sent Arjuna a response on May 29 identifying the terms Arjuna needed to commit to in order to provide ExxonMobil the relief it seeks in this case. *See* App. A.002. Those include: an admission that the proposal is excludable under both the SEC's Ordinary Business and Resubmission Rules; an agreement not to act as a representative for, or coordinate with, Follow This or other shareholders in submitting the same or similar future proposals; and agreeing to a stipulated judgment that the Court could enter and enforce. *Id.* Arjuna has not yet agreed to these terms.

Although a proper "contract" may not always be "required" to moot a case, Op. 9, a method to enforce Arjuna's unilateral commitment is still missing here. As the cases cited in the Court's Opinion demonstrate, a promise like Arjuna's new offer remains toothless unless ExxonMobil would be able to put that offer to preclusive use in the future. For example, in *Already*, in addition to making a broad promise not to sue in the future, Nike voluntarily "dismissed its claims *with prejudice*," *Already*, 568 U.S. at 92 (emphasis added), and a district court entered an order giving preclusive effect to that dismissal, *see Nike, Inc. v. Already, LLC*, 2011 WL 310321, at *1, *8 (S.D.N.Y. Jan. 20, 2011). So too in *Acheson*, where the plaintiff pressing mootness had "voluntarily dismissed her pending suits *with prejudice*." *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 4 (2023) (emphasis added). In those cases, the dismissals with prejudice would be *res judicata* in future disputes involving the same parties and issues. *See Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 n.8 (5th Cir. 1993) ("A dismissal which is designated 'with prejudice' is 'normally an adjudication on the merits for purposes of res judicata.'").

By contrast, Arjuna's promise is not "akin to those in *Already* or *Acheson*" because it is not backed by the preclusive effect of a judgment on the merits. Op. 11. Dismissing this case on

jurisdictional grounds would not have preclusive effect in a future dispute between ExxonMobil

and Arjuna because it would not be a judgment on the merits. *See Equitable Tr. Co. v. CFTC*, 669

F.2d 269, 272 (5th Cir. 1982) ("Dismissal for lack of jurisdiction is not . . . dismissal on the merits

sufficient to make an entire subsequent action res judicata."). If Arjuna were to resubmit the 2024

Proposal in the future on its own or in coordination with other shareholders, ExxonMobil would

thus lack the certainty of a judgment with preclusive effect. And ExxonMobil would find itself in

the same position it is in today—without "questions answered" about whether the proposal may

be excluded under the Ordinary Business and Resubmission Rules and unable to "enjoy the

benefits of reliance and repose secured by res judicata." Op. 7, 10. That makes this case unlike

*Already* and *Acheson.*

## II.     The Court Can Still Award Effectual Relief.

This case is not moot for the independent reason that this Court can still award ExxonMobil

effectual relief. "As long as the parties have a concrete interest, however small, in the outcome of

the litigation, the case is not moot." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298,

307–08 (2012) (cleaned up). And being able "to imagine an alternative form of relief is all that's

required to keep a case alive." *Dierlam*, 977 F.3d at 476–77 (cleaned up). The Court could issue

at least three forms of relief that would likely prevent the same dispute from arising again.

First, as the Court acknowledged, ExxonMobil seeks "declaratory relief" in the form of "a

legal determination of excludability" under the Ordinary Business and Resubmission Rules. Op.

20. A declaratory judgment that the 2024 Proposal is excludable would provide ExxonMobil an

enforceable right vis-à-vis the 2024 Proposal. But Arjuna's new promise continues to challenge

ExxonMobil's claims that the 2024 Proposal is excludable under the Ordinary Business and

Resubmission Rules. A declaratory judgment would thus grant ExxonMobil relief beyond

Arjuna's unilateral statements in a letter. In the absence of Arjuna's consent to the declaratory

relief ExxonMobil seeks, therefore, the Court can still award "effectual relief" in the form of a declaratory judgment. *Id.* at 10 n.7.

Second, a declaratory judgment that the 2024 Proposal is excludable would also inform ExxonMobil's "course of action" next year if another activist shareholder, such as Follow This, "resurrect[s]" the same proposal. *Id*. at 6 n.6, 10. Because there is no guarantee "that Exxon won't see the proposal again" from another shareholder, *id*. at 10 n.7, the Court should "elucidate Exxon's rights regarding the 2024 Proposal" so ExxonMobil knows it has the right to exclude the proposal if another shareholder submits it, *id*. at 10. This relief is necessary to afford complete relief given the Court's dismissal of Follow This because it is "reasonably" likely that Follow This will directly or indirectly resubmit the 2024 Proposal next year. *Id.* at 11. The Court's application of the Ordinary Business and Resubmission exclusions to the 2024 Proposal would also "inform Exxon of its rights vis-à-vis other proposals." *Id.* at 10.

Third, because Arjuna has reserved its right to collude with other activist shareholders, the Court can grant ExxonMobil further relief to prevent Arjuna from resubmitting the 2024 Proposal through or on behalf of others. In particular, the Court could order Arjuna not to act as a representative of any ExxonMobil shareholder in resubmitting the 2024 Proposal or any substantially similar proposal. The Court could also order Arjuna not to work behind the scenes with ICCR, Follow This, and other activist shareholders to resubmit such a proposal. On these points, Arjuna has thus far not provided ExxonMobil with any assurance that it will not circumvent its unilateral promise. *See* App. A.001–002. And given the Court's dismissal of Follow This— with which Arjuna submitted the 2024 Proposal, *see* ECF 1 ¶¶ 9, 67—such an order is necessary to provide ExxonMobil with complete relief.

*       *       *

In the end, Arjuna should not be allowed to so easily deprive ExxonMobil of its "right to a declaratory judgment." Op. 10. Its promise is both too narrow and too uncertain. Without a final judgment granting broader relief, Arjuna and other activist shareholders will have a roadmap to avoiding federal-court jurisdiction "any time Exxon sues for declaratory relief." *Id.* Dismissing this case as moot would embolden Arjuna and other activist shareholders to flood ExxonMobil and other public companies with improper shareholder proposals, knowing they always have "a get-out of-court-free card" in their back pockets, *id.* at 9, and a regulator supporting their efforts, *see* ECF 1 ¶¶ 2, 18, 61. Permitting this type of manipulation would deter public companies from exercising their right to seek relief from the federal courts and cede the field to the SEC's flawed shareholder proposal and proxy voting process. ExxonMobil, public companies, shareholders, and the SEC would all benefit from this Court's application of the Ordinary Business and Resubmission Rules to the 2024 Proposal in this live case or controversy.

**CONCLUSION**

The Court has subject matter jurisdiction.

10

Dated: May 31, 2024

Respectfully submitted,


*/s/ Ralph H. Duggins*
_____

Mark W. Rasmussen
Texas State Bar No. 24086291
Jonathan D. Guynn
Texas State Bar No. 24120232
JONES DAY
2727 North Harwood Street
Dallas, TX 75201-1515
Telephone: +1.214.220.3939
Facsimile:  +1.214.969.5100
E-mail: mrasmussen@jonesday.com
E-mail: jguynn@jonesday.com


Noel J. Francisco (*pro hac vice*)
D.C. Bar No. 464752
Brett A. Shumate (*pro hac vice*)
D.C. Bar No. 974673
Megan Lacy Owen
D.C. Bar No. 1007688
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: +1.202.879.3939
Facsimile:  +1.602.626.1700
E-mail: njfrancisco@jonesday.com
E-mail: bshumate@jonesday.com
E-mail: mlacyowen@jonesday.com

Ralph H. Duggins
Texas State Bar No. 06183700
Scott Fredricks
Texas State Bar No. 24012657
CANTEY HANGER LLP
600 W. 6th Street, Suite 300
Fort Worth, Texas 76102
Telephone: +1.817.877.2824
E-mail: rduggins@canteyhanger.com
E-mail: sfredricks@canteyhanger.com

David Woodcock
Texas State Bar No. 24028140
Hon. Gregg J. Costa
Texas State Bar No. 24028160
GIBSON, DUNN & CRUTCHER
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-2923
Telephone: +1.214.698.3211
Facsimile:  +1.214.571.2914
E-mail: dwoodcock@gibsondunn.com
E-mail: gcosta@gibsondunn.com


ATTORNEYS FOR PLAINTIFF

11

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which caused service to be made upon all counsel of record.

*/s/ Ralph H. Duggins*
Ralph H. Duggins